Gibson, Dunn &
Crutcher LLP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| ROBERT ROSS, | CASE NO. 4:19-CV-06669 (JST) |
|---|---|
| Plaintiff, | **JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER** |
| v. | |
| AT&T MOBILITY, LLC, | **Hearing:**<br>Date: May 19, 2020<br>Time: 2:00 PM |
| Defendant. | Place: 1301 Clay Street, 2nd Floor<br>       Courtroom 6<br>       Oakland, CA 94612<br>Judge: Judge Jon S. Tigar |

Pursuant to Civil Local Rule 16-9, Rule 26(f) of the Federal Rules of Civil Procedure, and the Standing Order for All Judges of the Northern District of California, Plaintiff Robert Ross ("Mr. Ross") and Defendant AT&T Mobility LLC ("AT&T") hereby submit this Joint Case Management Statement, Rule 26(f) Report, and Proposed Order. Where the parties have disagreements in their respective submissions below, the fact that any assertion in either submission is not addressed or refuted by the opposing party does not reflect that party's agreement to the assertion at issue.

## I. JURISDICTION & SERVICE

**A.   Plaintiff's Statement**

This Court has jurisdiction over this matter under 28 U.S.C. § 1331 because this case arises under federal question jurisdiction under the Federal Communications Act ("FCA"). Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over the state law claims because the claims are derived from a common nucleus of operative facts. The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Mr. Ross is a citizen of a different state than AT&T. This Court has personal jurisdiction over AT&T because AT&T purposefully directs its conduct at California, transacts substantial business in California (including in this District), has substantial aggregate contacts with California (including in this District), engaged and is engaging in conduct that has and had a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons in California (including in this District), and purposely avails itself of the laws of California. AT&T had more than 33,000 employees in California as of 2017, and 1,470 retail locations in the state. Mr. Ross purchased his AT&T mobile plan in California, visited AT&T retail locations in California, and was injured in California by the acts and omissions alleged herein.

Plaintiff properly served AT&T on October 25, 2019. AT&T has accepted service, without waiving other jurisdictional defenses, and there are no outstanding claims disputing adequacy of service.

**B.   Defendant's Statement**

Although AT&T does not agree with the recitations in Plaintiff's Jurisdictional Statement, AT&T is not contesting that this Court has personal jurisdiction over AT&T in this case. AT&T also does not dispute subject matter jurisdiction. Mr. Ross asserts a claim under the Federal

Communications Act (FCA), which creates federal question jurisdiction. His remaining claims fall under the Court's supplemental jurisdiction, because they appear to arise from the same nucleus of operative facts. Dkt. 1, Compl. ¶ 13. Based on the allegations in the Complaint, Mr. Ross and AT&T are also citizens of different states and the amount in controversy exceeds $75,000, giving the Court diversity jurisdiction. Compl. ¶ 13. All parties have been served and venue is proper before this Court. *See* Dkt. 1.

## II. FACTS

**A.     Plaintiff's Statement**

AT&T failed to protect the sensitive and confidential account data of Robert Ross, one of its mobile service subscribers, which resulted in massive violations of Mr. Ross's privacy, the compromise of his highly sensitive personal and financial information, and the theft of more than $1 million.

In an egregious violation of the law and its own promises, and despite advertising itself as a leader in technological development and as a cyber security-savvy company, AT&T breached its duty and promise to Mr. Ross to protect his account and the sensitive data it contained. AT&T failed to implement sufficient data security systems and procedures, instead allowing third parties to gain unauthorized access to Mr. Ross's AT&T account in order to steal from him via a SIM swap.

On October 26, 2018 at approximately 6:00 PM PT, Mr. Ross began receiving notifications that someone was attempting to withdraw currency from his account at Gemini, a provider of financial services. This caused Mr. Ross significant distress because, at the time, Mr. Ross had $500,000 in USD in his Gemini account.

At approximately the same time, Mr. Ross noticed that his AT&T mobile phone had lost service and displayed "No Service", and he also noticed that he was automatically logged out of his Gmail account.

Mr. Ross immediately suspected that a hacker attack was underway and took his mobile phone to an Apple store for assistance. Apple representatives assisted Mr. Ross in contacting AT&T Customer Support. At that time, an AT&T employee informed the Apple representatives that Mr. Ross's SIM card had been changed. AT&T employees advised the Apple representatives to provide Mr. Ross with a new SIM card, and then Apple employees replaced the SIM card in Mr. Ross's phone. AT&T then

activated the new SIM card, restoring Mr. Ross's access to his AT&T mobile number and account services.

When Mr. Ross returned home that evening, he called AT&T's customer service to discuss the unauthorized access to his account by AT&T employees and the unauthorized SIM swap.  An AT&T representative named Ryan S. informed Mr. Ross that an unauthorized SIM swap had occurred on his service at approximately 5:47 PM PT by another AT&T representative.  Ryan S. also informed Mr. Ross that this unauthorized SIM swap request was made using customer owned and maintained equipment ("COAM"), and explained that COAM is a mobile phone that is not provided by AT&T and would generally be of unknown origin to AT&T (for example, a hacker might purchase a used mobile phone on the internet).  Furthermore, Ryan S. expressed surprise that this SIM swap was executed as he said it was against AT&T internal policies for an AT&T representative to execute a COAM-originated SIM swap request from anyone calling in to an AT&T call center. Ryan S further represented that he made a specific note of this violation of AT&T's own policy in Mr. Ross's account, reading the note verbally to Mr. Ross "I have informed customer that a SIM card and IMEI change occurred on 10/26/18 at 5:47pm.  This change was approved by agent which is a direct violation of the ATT activation policy."

Within minutes of AT&T giving control over Mr. Ross's AT&T mobile number to the hackers during the 5:47 COAM SIM swap, they used that control to access and take over Mr. Ross's accounts at his financial services providers, including but not limited to, Coinbase, Gemini, and Binance. Coinbase and Gemini allow their users to store US dollars that can be used to buy and sell cryptocurrencies (such as bitcoin) within the user's account, in a similar way to how users can store US dollars used to buy and sell stocks at financial services providers such as Fidelity, Schwab, and E*Trade.

At the time of the SIM swap attack, Mr. Ross had approximately $500,000 in US dollars in his Gemini account and approximately $500,000 in US dollars in his Coinbase account.  By utilizing their control over Mr. Ross's mobile phone number, which AT&T gave them, third-party hackers were able to access and take control of these accounts of Mr. Ross and control the entire USD amounts he held in both accounts.  The hackers used Mr. Ross's $1,000,000 in US dollars to purchase bitcoin—a type

of cryptocurrency that can be difficult to trace—and then the hackers transferred that bitcoin into accounts they controlled at a different financial services provider. This made the cryptocurrency exceedingly difficult to trace, let alone recover.

The hackers also transferred cryptocurrency worth approximately $3,000 from Mr. Ross's Binance account into accounts they controlled, thereby stealing those funds from him as well.

The hackers also used their control over Mr. Ross's AT&T mobile phone number to access, change the passwords, and take control of several of Mr. Ross's most sensitive online accounts, including, but not limited to, his Authy, Google, Yahoo!, and DropBox accounts. In taking over his Google account, the hackers also changed his passwords and the phone number linked to Mr. Ross's two-factor authentication for these accounts, which made it impossible for Mr. Ross to regain immediate access to, let alone control of, these accounts (because any requests to remind him of or reset the password no longer were sent to Mr. Ross's mobile phone, but rather to the hacker's phone). It took Mr. Ross approximately 7-10 days to regain access to and restore control over his email, even longer for his other online personal accounts, and several weeks to regain access to the accounts taken over at his other financial services providers. In addition, the hackers deleted several weeks' worth of emails and substantial data from Mr. Ross's Google account. Mr. Ross has not been able to recover any of this data.

AT&T's actions and conduct were a substantial factor in causing significant financial and emotional harm to Mr. Ross and his family. But for AT&T employees' unauthorized access to Mr. Ross's account, and AT&T's failure to protect Mr. Ross through adequate security and oversight systems and procedures, Mr. Ross would not have had his privacy repeatedly violated and would not have been a victim of SIM swap theft.

**B.     Defendant's Statement**

AT&T's investigation into the facts underlying Mr. Ross's complaint is continuing. In his Complaint, Mr. Ross claims that criminal hackers swapped his SIM card into a phone controlled by the hackers, and then used his SIM card to steal cryptocurrency. Even assuming this theft occurred—which, at this point, AT&T lacks information sufficient to determine—multiple steps had to be taken by multiple parties, including Mr. Ross, to permit a SIM swap to result in a theft of funds held by Mr.

Ross. Moreover, AT&T does not control the acts of criminal hackers and has acted reasonably at all times. Accordingly, any alleged loss is due to factors other than AT&T and outside of AT&T's control, including the negligence or intentional misconduct of other actors or Mr. Ross's own negligence.

Criminal hackers would not have known to target Mr. Ross for a SIM swap, known where to locate his funds, or been able to access those funds without first acquiring a wealth of information about Mr. Ross. Mr. Ross has not pled any facts relating to these issues. If any portion of his Complaint survives AT&T's motion to dismiss, AT&T anticipates exploring in discovery what information criminal hackers had, and required, to conduct the SIM swap and the alleged theft. In addition, Mr. Ross's alleged loss depended heavily on his own security practices, as well as the security practices of other companies. AT&T had no control over these security practices and, therefore, cannot be held responsible for any alleged loss. AT&T anticipates exploring in discovery Mr. Ross's own security practices and any other security protecting his allegedly stolen currency.

Mr. Ross's claim for liability also relies on equating AT&T with Cristelo V., an individual who allegedly performed the unauthorized SIM swap. But Cristelo V. was associated with an AT&T contractor; he was not an AT&T employee. Accordingly, his actions, even if wrongful, are not attributable to AT&T. AT&T is not responsible for wrongful acts by an employee or contractor of another company who acted outside the scope of his employment and against AT&T policy.

Finally, it is impossible for AT&T to have released any private information through a simple SIM swap. A SIM swap does not transfer any information—it merely transfers incoming messages and phone calls to a different phone. It does not give access to any passwords, usernames, email addresses, account information, social security numbers, or any other information that is required to access an online account. Accordingly, Mr. Ross's allegation that multiple of his accounts were accessed as a result of the alleged SIM swap is implausible. As to each account that Mr. Ross claims was hacked, AT&T anticipates exploring in discovery how the information needed to access that account was obtained by hackers.

These shortcomings defeat all of Mr. Ross's claims. The connection between AT&T's security practices and Mr. Ross's alleged loss is too tenuous to hold AT&T responsible for the acts of third-party criminals. Moreover, Mr. Ross's theories of liability hinge on blaming AT&T for conduct that

was undertaken by an individual who was not employed by AT&T. Accordingly, all of his claims must fail.

Beyond these factual shortcomings, which apply to all of Mr. Ross's claims, claim-specific flaws doom several of his claims. Many of these failures are highlighted in AT&T's currently pending motion to dismiss Mr. Ross's Complaint. To the extent that any of these claims survive the motion to dismiss, Mr. Ross's deficient *allegations* likely foreshadow an inability to meet his standard of *proof* at the stage of summary judgment or trial.

First, as to Mr. Ross's claim that AT&T violated his right of privacy under the California Constitution, Mr. Ross must prove that AT&T committed an egregious breach of social norms. Mr. Ross does not meet the standard of alleging an egregious breach of social norms, and certainly cannot prove it. Indeed, he only alleges mere negligence, and even when his allegations are taken as true, they do not rise close to the level that courts have found actionable under the California Constitution. AT&T has acted reasonably in providing security to its customers, including Mr. Ross. AT&T anticipates exploring in discovery what, if any, "private" information Mr. Ross claims was disclosed. No such information is specifically alleged to have been disclosed in the Complaint.

Second, as to Mr. Ross's negligence claims, Mr. Ross cannot show that AT&T acted with anything less than due care. Even if a SIM swap occurred, that does not show that *AT&T* acted unreasonably. To the contrary, criminal hackers have shown an ability to circumvent even the most advanced security, and AT&T's Privacy Policy warned customers of that fact. The mere assertion that Mr. Ross suffered a theft—if true—does not put the blame on AT&T for that act of third parties. Moreover, as set forth in AT&T's motion to dismiss, Mr. Ross's negligence claims fail as a matter of law because they run afoul of the economic loss rule.

Third, as to Mr. Ross's Consumer Legal Remedies Act claim, Mr. Ross has not pled, and certainly cannot prove, that he relied on any statement by AT&T to conclude that he was shielded from any risk of criminal conduct by third parties. To the contrary, AT&T's Privacy Policy specifically discloses that risk. And while Mr. Ross claims that the Privacy Policy inadequately disclosed the limits of security that are available, he does not allege, and therefore cannot prove, that he ever read that Privacy Policy in connection with his phone service.

Fourth, as to Mr. Ross's Computer Fraud and Abuse Act claim, Mr. Ross is attempting to stretch a statute far beyond its intended scope. The CFAA narrowly targets funds spent to investigate or repair a damaged computer, or costs incurred for interim service while a computer is inoperable. Mr. Ross cannot show that he spent over $5,000 investigating who allegedly stole his funds. Moreover, his primary claimed damages—the allegedly stolen funds—are not the type of damages recoverable on a CFAA claim. In addition, Mr. Ross be unable to prove that there was an unauthorized access of his AT&T account—a requirement for a CFAA violation.

Fourth, Mr. Ross's claim under the California Unfair Competition Law (UCL) fails because it requires a predicate violation. To prove a violation of the UCL, Mr. Ross must prove a violation of another law. The UCL does not proscribe any particular acts; instead, it borrows violations of other laws and treats them as independently actionable unlawful practices. Without the ability to sustain his other claims, Mr. Ross will be unable to maintain his UCL claim.

Finally, AT&T lacks any information regarding Mr. Ross's claim for compensatory damages, which may be shown to be speculative or otherwise not recoverable. Mr. Ross's request for punitive damages is fatally flawed for the reasons set forth in AT&T's motion to dismiss. No officer, director, or managing agent of AT&T had advance knowledge of the SIM swap, and no employee of AT&T— much less any officer, director, or managing agent—acted with the required mental state of fraud, malice, or oppression.

### III.   LEGAL ISSUES

**A.   Plaintiff's Position**

The legal issues presented in this case include, but are not limited to:

1. Whether AT&T allowed unauthorized access to Mr. Ross's AT&T account;
2. Whether AT&T's failure to protect Mr. Ross's account from unauthorized access, and the confidential information contained therein, violates the Federal Communications Act, 47 U.S.C. § 201 *et seq*;
3. Whether AT&T was negligent in failing to secure Mr. Ross's account—and protect the confidential and sensitive data contained therein—and to properly hire, train, and supervise its employees;

4. Whether AT&T is liable for the acts of its employees;

5. Whether AT&T made material misrepresentations and omissions concerning its safeguarding of Mr. Ross's Customer Proprietary Network Information (CPNI) in violation of California's Unfair Competition Law, (UCL), Cal. Bus. & Prof. Code § 17200 *et seq.*;

6. Whether AT&T's actions constitute a violation of Mr. Ross's right to privacy under the California Constitution;

7. Whether AT&T's material misrepresentations and omissions concerning the safeguarding of Mr. Ross's CPNI and confidential information constitute a violation of the California Legal Remedies Act (CLRA), Cal. Civ. Code § 1750 *et seq.*;

8. Whether AT&T's failure to protect Mr. Ross's account from unauthorized access, and the confidential information contained therein, violates the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030; and

9. Whether AT&T is liable to Mr. Ross for punitive damages.

**B.    Defendant's Position**

The legal issues in this case include, but are not limited to:

1. Whether Mr. Ross has adequately pleaded, and can prove by a preponderance of the evidence, that AT&T proximately caused the alleged theft of Mr. Ross's cryptocurrency;

2. Whether Mr. Ross can prove by a preponderance of the evidence his claim under the Federal Communications Act, 47 U.S.C. § 201 *et seq.*;

3. Whether Mr. Ross can prove by a preponderance of the evidence his claim under California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200 *et seq.*;

4. Whether Mr. Ross adequately pleaded, and can prove by a preponderance of the evidence, any violation of his right to privacy under the California Constitution;

5. Whether Mr. Ross adequately pleaded, and can prove by a preponderance of the evidence, that AT&T engaged in the torts of negligence and negligent supervision and entrustment;

6. Whether Mr. Ross's negligence-based claims are barred, or his recovery reduced, by his own contributory negligence or the negligence of third parties;

7. Whether the economic loss doctrine bars Mr. Ross's negligence-based claims;

8. Whether Mr. Ross has adequately pleaded, and can prove by a preponderance of the evidence, that he relied on any representations by AT&T, as required for his claim under the California Legal Remedies Act (CLRA), Cal. Civ. Code § 1750 *et seq.*;

9. Whether Mr. Ross adequately pleaded, and can prove by a preponderance of the evidence, a claim under the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030;

10. Whether Mr. Ross adequately pleaded, and can prove by a preponderance of the evidence, any recoverable and non-speculative compensatory damages; and

11. Whether Mr. Ross has adequately pleaded, and can prove by clear and convincing evidence, that he is entitled to punitive damages.

## IV.  MOTIONS

**A.  Pending Motions**

Defendant filed a motion to dismiss on December 6, 2019, which has been fully briefed and is pending now before this Court. *See* ECF Nos. 16, 21, 22.

**B.  Defendant's Position**

To the extent the Court dismisses any portion of the currently operative Complaint, AT&T anticipates that it might be required to file an additional motion to dismiss if Mr. Ross files an amended complaint that does not remedy the problems AT&T has identified in the existing Complaint. AT&T also anticipates filing a motion for summary judgment at an appropriate time.

## V.  AMENDMENT OF PLEADINGS

**A.  Plaintiff's Position**

Plaintiff reserves the right to amend the Complaint at a later point in the litigation. Plaintiff may move to amend if the court finds there are curable deficiencies in his complaint after the motion to dismiss has been decided. Plaintiff requests leave to amend 30 days after the decision on the motion to dismiss is provided.

**B.  Defendant's Position**

AT&T reserves the right to amend any pleadings when allowed as of right by the Federal Rules or supported by good cause.

## VI. EVIDENCE PRESERVATION

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information and have complied with their evidence preservation obligations.

## VII. DISCLOSURES

The initial Rule 26(a)(1) disclosures shall be deferred pending resolution of the motion to dismiss. The parties' respective initial disclosures will include the names of individuals with discoverable information and a description of documents in each party's possession, custody or control that each party may use to support its claims and defenses.

## VIII. DISCOVERY

**A.  Joint Position**

A. No discovery has been taken to date. The parties agree no discovery will be taken until the Court's decision on AT&T's motion to dismiss.

B. The parties have considered entering into a stipulated e-discovery order.

C. The parties have agreed to the following discovery limitations:

- The parties presumptively shall serve no more than 35 interrogatories, but each party shall have the ability to use a supplemental declaration to justify an increased number of interrogatories. Each party also preserves the ability to seek leave for additional interrogatories.

- The parties shall be limited to 25 total requests for admission, unless the parties later agree to increase this number. Each party also preserves the ability to seek leave for additional requests for admission and to confer regarding the treatment of requests for admission regarding the authentication of documents.

- The parties agree, in accordance with Federal Rule of Civil Procedure 34, that there will be no numerical limit on the number of requests for production.

- The parties agree that they will discuss an appropriate timetable for document production in meet-and-confer discussions after document requests are served.

- The parties agree that each party will be entitled to take 10 factual depositions of the opposing party, with the ability to seek leave for additional depositions. The time shall be actual record time, limited to a maximum of seven (7) hours per deposition.
- The parties anticipate that they will require expert witnesses at the time of trial.
  - The plaintiff anticipates calling experts in the fields of cryptocurrency, cybersecurity, SIM card and data security, and damages.
  - AT&T is still investigating and evaluating its defenses, but anticipates it may call expert witnesses in the fields of cryptocurrency, cybersecurity, SIM card and data security, and damages. The parties reserve the right to disclose additional witnesses beyond those anticipated at this point.

D. The parties anticipate seeking depositions of third-party witnesses.

E. The parties have discussed the taking of depositions pursuant to Rule 30(b)(6) and agree that each Rule 30(b)(6) deposition shall count as a fact deposition and must be scheduled within the time for fact discovery.

F. With respect to non-party written discovery, if the non-party does not produce copies to both sides, the issuing party will provide a copy of all materials produced to the other side within seven (7) calendar days after receipt of the materials from the non-party unless the issuing party seeks relief from the Court from doing so within that seven (7) calendar day period. Any party that does not have access to materials provided by a non-party in response to a subpoena issued pursuant to Fed. R. Civ. P. 45 for at least two (2) business days before any deposition in which the materials will be used as exhibits may elect to have the deposition postponed until the party has had access to the materials for at least two (2) business days.

## IX.   CLASS ACTIONS

Mr. Ross did not file this case as a class action.

## X.   RELATED CASES

A. **Plaintiff's Position**

Mr. Ross believes that the following cases are related:

- *Shapiro v. AT&T*, Case No. 19-CV-08972, pending in the Central District of California;
- *Williams v. AT&T*, Case No. 19-CV-00475, pending in the Eastern District of North Carolina;
- *Terpin v. AT&T*, No. 18-CV-06975, pending in the Central District of California.

Each case involves a legal determination of whether AT&T's is liable for maintaining inadequate data protection policies and procedures, which directly resulted in SIM swaps and loss to plaintiffs.

**B.   Defendant's Position**

Each of the cases mentioned by Mr. Ross involves allegations of a SIM swap and AT&T Mobility LLC, but AT&T does not believe they are "related" to this case in a legal sense.

## XI.   RELIEF

**A.   Plaintiff's Position**

Mr. Ross states that, at this stage of the litigation, the precise amount of damages is not known. However, through the course of litigation, Mr. Ross intends to determine the precise amount of damages with the aid of expert testimony and discovery.

Mr. Ross seeks judgment against AT&T for his asserted causes of action, public injunctive relief requiring cessation of AT&T's acts and practices complained of herein pursuant to, inter alia, Cal. Bus. & Prof. Code § 17200, 47 U.S.C. § 401(b), and Cal. Civ Code § 1780, pre- and post-judgment interest, as allowed by law; an award of monetary damages, including punitive damages, as allowed by law, reasonable attorneys' fees and costs reasonably incurred, including but not limited to attorneys' fees and costs pursuant to 47 U.S.C. § 206; and any and all other and further relief to which Mr. Ross may be entitled

**B.   Defendant's Position**

AT&T denies all liability and denies that Mr. Ross is entitled to any damages, injunctive relief, or any other relief whatsoever.

## XII.   SETTLEMENT AND ADR

AT&T filed its ADR Certification on March 3, 2020. Dkt. 25. Mr. Ross filed his ADR Certification on March 5, 2020. Dkt. 26. Both parties would like to revisit ADR at the initial case management conference.

### XIII. CONSENT TO MAGISTRATE

Mr. Ross declined Magistrate Judge jurisdiction on November 1, 2019. Dkt. 10.

### XIV. OTHER REFERENCES

The parties do not believe this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

### XV. NARROWING OF ISSUES

The parties are not presently in a position to address whether it is feasible or desirable to: (a) narrow the issues in the case by agreement or motion, (b) bifurcate the issues, claims or defenses at trial, or (c) reduce the length of trial by stipulation, use of summaries, or other expedited means of presenting issues. AT&T believes that its Motion to Dismiss will narrow the issues or dispose of the case.

### XVI. EXPEDITED TRIAL PROCEDURE

The parties agree that this case is not appropriate for the expedited trial procedure.

### XVII. SCHEDULING

The parties propose the following schedule:

| Event | Date |
|---|---|
| Initial ADR Session | August 28, 2020 |
| Discovery Cut-Off | April 9, 2021 |
| Expert Disclosures | April 23, 2021 |
| Rebuttal Disclosures | May 28, 2021 |
| Expert Discovery Cut-Off | June 16, 2021 |
| Dispositive Motions Filing | July 9, 2021 |
| Proposed Pretrial Final Order | September 10, 2021 |
| Pretrial Conference | September 24, 2021 |
| Trial | November 8, 2021 |

## XVIII.   TRIAL

Mr. Ross requested a jury trial.  *See* Dkt. 1.  Mr. Ross estimates that three weeks are needed for a jury trial.  AT&T estimates that ten days are needed for a jury trial, subject to revision upon further development of the case through discovery and/or decisions of this Court.

## XIX.   DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

### A.   Plaintiff's Position

Mr. Ross has not filed any "Certification of Interested Entities or Persons."  Mr. Ross restates that, other than the named parties, there is no interest to report.

### B.   Defendant's Position

Pursuant to Federal Rule of Civil Procedure 7.1 and Civil Local Rule 3-15, AT&T filed a Corporate Disclosure Statement and a Certification of Interested Parties on December 6, 2019.  *See* Dkt. 15.

AT&T Mobility LLC is a direct or indirect wholly-owned subsidiary of AT&T Inc.  No publicly held corporation owns 10% or more of AT&T Inc.'s stock.  Pursuant to Civil L.R. 3-15, AT&T Mobility LLC again certifies that the following listed persons, associates of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of the proceeding: AT&T Inc.

## XX.   PROFESSIONAL CONDUCT

The parties submit that their attorneys of record have reviewed the Guidelines for Professional Conduct for the Northern District of California.

## XXI.   OTHER

All matters pertinent to the fair and efficient management of this case have been covered in the foregoing sections of this statement.

| | |
|---|---|
| Dated: May 12, 2020 | MARCELLUS MCRAE<br>ASHLEY E. JOHNSON<br>GIBSON, DUNN & CRUTCHER LLP<br><br>By:  /s/ *Marcellus McRae*<br>Marcellus McRae<br>Ashley E. Johnson<br><br>MARCELLUS MCRAE, SBN 140308<br>  mmcrae@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER LLP<br>333 South Grand Avenue<br>Los Angeles, CA  90071-3197<br>Telephone:     213.229.7000<br>Facsimile:      213.229.7520<br><br>ASHLEY E. JOHNSON, admitted *pro hac vice*<br>  ajohnson@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER LLP<br>2001 Ross Avenue<br>Dallas, TX  75201<br>Telephone:  214.698.3100<br>Facsimile:  214.571.2949<br><br>Attorneys for Defendant AT&T MOBILITY, LLC |
| Dated: May 12, 2020 | Christopher Grivakes<br>AFFELD GRIVAKES LLP<br><br>By:   /s/ *Christopher Grivakes*<br>Christopher Grivakes<br>Damion Robinson<br><br>CHRISTOPHER GRIVAKES<br>  cg@agzlaw.com<br>DAMION ROBINSON<br>  dr@agzlaw.com<br>AFFELD GRIVAKES LLP<br>2049 Century Park East, Suite 2460<br>Los Angeles, CA 90067<br>Telephone:  310.979.8700<br>Facsimile: 310.979.8701<br><br>Attorney for Plaintiff ROBERT ROSS |

**FILER'S ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), Marcellus A. McRae hereby attests that concurrence in the filing of this document has been obtained from all the signatories above.

Dated: May 12, 2020  /s/ *Marcellus McRae*
Marcellus McRae

**[PROPOSED] CASE MANAGEMENT ORDER**

The above JOINT CASE MANAGEMENT STATEMENT is approved as the Case Management Order for this case and all parties shall comply with its provisions.

IT IS SO ORDERED.

Dated: _____, 2020

_____
HON. JON S. TIGAR
UNITED STATES DISTRICT JUDGE