UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re TWITTER, INC. SECURITIES LITIGATION<br><br>This Document Relates to:<br>    ALL ACTIONS | Case No. 16-cv-05314-JST<br><br>**ORDER GRANTING MOTION TO PRECLUDE PLAINTIFFS' UNPLED ALLEGATIONS**<br><br>Re: ECF No. 374, 376 |

Before the Court is Defendants' motion to preclude Plaintiffs' unpled allegations. ECF No. 469. The Court will grant the motion.

## I.   BACKGROUND

This is a securities class action against Twitter, Inc., a social media company, and two of its officers, Richard Costolo and Anthony Noto, for alleged violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. ECF No. 81 ¶¶ 2-3, 14-15. Costolo was the Chief Executive Officer ("CEO") of Twitter until July 1, 2015. *Id.* ¶ 3, 14. Noto was Twitter's Chief Financial Officer ("CFO") during all relevant times. *Id.* ¶ 15.

The gravamen of the operative Consolidated Amended Complaint ("CAC") is that Defendants made misleading statements that caused the price of Twitter stock to trade at artificially high prices during the Class Period, which ranges from February 6, 2015, to July 28, 2015. ECF No. 81 ¶¶ 2-8, 17, 134. Plaintiffs allege that Defendants misled investors during the Class Period by making public statements that did not reflect the actual state of Twitter's user engagement, which is relevant to evaluating Twitter's potential user growth and financial performance. *Id.* Plaintiffs contend that Defendants omitted information from the challenged statements that would have provided investors with the necessary context to evaluate Twitter as an

investment. *Id.* ¶¶ 40-59. This included information pertaining to Twitter's daily active users ("DAU") and the ratio of DAU to monthly active users ("MAU") ("DAU/MAU"), which are metrics that measure user engagement or frequency of use. *Id.* Plaintiffs allege that persons who purchased Twitter stock during the Class Period suffered economic losses when the price of Twitter stock declined as a result of two sets of corrective disclosures that revealed the problems with user engagement, and potentially with user growth, that the challenged statements had concealed. *Id.* ¶¶ 60-65, 134, 142.

On October 16, 2017, the Court granted in part and denied in part Defendants' motion to dismiss. ECF No. 113. The Court permitted Plaintiffs to proceed with claims that several statements pertaining to Twitter's MAU, ad engagement, timeline views, and DAU/MAU ratio were false or misleading. *Id.* at 24-28, 31-32, 41. On April 17, 2020, the Court denied Defendants' motion for summary judgment. ECF No. 478.

On February 11, 2020, the parties exchanged proposed verdict forms for trial. *See* ECF No. 469 at 9; ECF No. 476 at 9; ECF No. 469-8. In their form's table of alleged false and misleading statements, Plaintiffs included the following statement made by Noto during Twitter's Q4 2014 earnings call on February 5, 2015: "So we're encouraged by the trend in churn." ECF No. 469-8 at 4. On April 1, 2020, Defendants filed this motion to preclude Plaintiffs from asserting Noto's unpled Churn Statements[1] as a basis for liability at trial. ECF No. 469. On April 15, 2020, Plaintiffs filed an opposition to Defendants' motion. ECF No. 476. Defendants filed a reply on April 22, 2020. ECF No. 484.

---

[1] In their opposition to Defendants' motion to preclude, Plaintiffs assert that the following Churn Statements are false or misleading: (1) "As a [sic] relates to churn broadly, we don't release the specific number. ***But I would tell you churn has improved in November and December compared to the prior months, and we're encouraged by that.*** Our growth team has a number of initiatives that are specifically addressed at converting unhealthy users to healthy users very early in their lifetime on Twitter" and (2) "[T]here's a lot of initiatives against the whole concept of having healthy users from day one. And if they're not, addressing that very quickly after they've come onto the platform, before we miss the opportunity to improve that. ***So we're encouraged by the trend in churn; there's a lot of initiatives there.***" ECF No. 476 at 6-7 (emphasis in original). Defendants seek to preclude Plaintiffs from asserting both Churn Statements as bases for liability at trial. ECF No. 484 at 6 n.1.

2

## II. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## III. LEGAL STANDARDS

### A. PSLRA and Rule 9(b)

To assert a claim pursuant to Section 10(b) of the Securities Exchange Act of 1934, a plaintiff must show: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 157 (2008). In addition, a plaintiff's allegations "must meet the higher, exacting pleading standards of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ('PSLRA')." *Oregon Pub. Employees Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 604 (9th Cir. 2014).

Under the PSLRA, a plaintiff's "complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1)(B). When a plaintiff alleges an actionable statement, the complaint "will go forward only as to those specific statements for which the plaintiff has pled sufficient facts to comply with Rule 9 and the PSLRA." *Kaplan v. Charlier*, No. 2:07-cv-00849-LDG (GWF), 2008 WL 11351439, at *2 (D. Nev. Nov. 19, 2008) (emphasis omitted). "[S]uch actionable statements will not permit the plaintiff to prosecute other statements for which the plaintiff has not complied with the PSLRA." *Id.*; *see Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994) (finding that "[t]he district court did not err in refusing to consider" statements that were "missing entirely from [plaintiff's] second amended complaint and, at the time when the motions for summary judgment were filed, were not present in any pleading before the district court . . ."), *overruled on other grounds by City of Dearborn Heights Act 345 Police & Fir Ret. Sys. V. Align Tech., Inc.*, 856 F.3d 605 (9th Cir. 2017).

If a plaintiff raises new statements during the pendency of a motion for summary judgment, the court may construe this addition as a motion for leave to amend the complaint to

3

conform to the evidence and argument presented at summary judgment. *See Kaplan v. Rose*, 49 F.3d at 1370 ("An addition of new issues during the pendency of a summary judgment motion can be treated as a motion for leave to amend the complaint."); *In re JDS Uniphase Corp. Sec. Litig.*, No. C 02-1486 CW, 2007 WL 2429593, at *5-6 (N.D. Cal. Aug. 24, 2007) (citing *Kaplan v. Rose*, 49 F.3d at 1370)). In such cases, Courts may "deem" new statements "part of the complaint" if the plaintiffs meet the applicable requirements for leave to amend set forth in the Federal Rules of Civil Procedure and the amendments do not "concern[] an entirely new theory" of liability. *See JDS Uniphase*, 2007 WL 2429593, at *5-6 (considering several newly-alleged statements in deciding motion for summary judgment and granting leave to amend such that the "statements [were] deemed part of the complaint"); *In re Oracle Corp. Sec. Litig.*, No. C 01-00988 SI, 2009 WL 1709050, at *18 (N.D. Cal. June 19, 2009) (declining to consider new allegation introduced at summary judgment where "the unpled allegation concern[ed] an entirely new theory of accounting fraud").

### B. Leave to Amend

Under Federal Rule of Civil Procedure 15(a)(2), a "court should freely give leave [to amend] when justice so requires." The Court considers five factors in deciding a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended its complaint. *In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013). The rule is "to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)). Generally, a court should determine whether to grant leave "with all inferences in favor of granting the motion." *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999). "Courts may decline to grant leave to amend only if there is strong evidence of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [or] futility of amendment, etc.'" *Sonoma Cty. Ass'n of Retired Emps. v. Sonoma Cty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

1  Requests to modify a scheduling order made after the Court has set a deadline for
2  amending the pleadings are governed by Federal Rule of Civil Procedure 16. *Coleman v. Quaker*
3  *Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000). Rule 16 requires "good cause" and the consent of
4  the Court to amend a scheduling order. Fed. R. Civ. P. 16(b)(4). "Unlike Rule 15(a)'s liberal
5  amendment policy," the good cause standard "primarily considers the diligence of the party
6  seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir.
7  1992). "Although the existence or degree of prejudice to the party opposing the modification
8  might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving
9  party's reasons for seeking modification." *Id.*; *see also W. States Wholesale Nat. Gas Antitrust*
10 *Litig.*, 715 F.3d at 737. "If the party seeking the modification 'was not diligent, the inquiry should
11 end' and the motion to modify should not be granted." *Zivkovic v. S. California Edison Co.*, 302
12 F.3d 1080, 1088 (9th Cir. 2002) (quoting *Johnson*, 975 F.2d at 609).

## IV.   DISCUSSION

Defendants argue that Plaintiffs should be precluded from asserting the Churn Statements as a basis for liability at trial because they "never alleged that any statements regarding churn were false or misleading." ECF No. 469 at 5, 6; ECF No. 484 at 6. Plaintiffs do not contest Defendants' assertion that neither the original complaint nor the CAC include the Churn Statements. *See* ECF No. 476 at 10. Instead, Plaintiffs urge the Court to "deem the Complaint amended to include" these statements. ECF No. 476 at 12. The Court construes Plaintiffs' request as a motion for leave to amend the CAC. *See Kaplan v. Rose*, 49 F.3d at 1370.

Plaintiffs argue that their "inclusion of the Churn Statement[s] in their summary judgment opposition [is] sufficient" to warrant leave to amend "given the 'very liberal policy in granting leave'" under Rule 15. ECF No. 476 at 12 (quoting *Rezvan v. Philips Elecs. North Am. Corp.*, No. 15-cv-04767-HSG, 2016 WL 8193160, at *7 (N.D. Cal. Dec. 15, 2016)). However, it is Rule 16 and not Rule 15 that governs this case. The Court previously set October 1, 2018 as the deadline to amend the pleadings. ECF No. 172 at 1. Plaintiffs' request to amend the CAC was filed no earlier than October 28, 2019, when Plaintiffs referenced a portion of the Churn Statements in

5

their opposition to Defendants' motion for summary judgment.[2] ECF No. 362-4 at 6-7 ("[D]uring Twitter's Q4 2014 earnings call, Noto told investors: 'we're encouraged by the trend in churn.'") (citation and emphasis omitted). ECF No. 476. Thus, Plaintiffs must demonstrate good cause before the Court will allow amendment. Fed. R. Civ. P. 16(b)(4); *see Ctr. for Biological Diversity v. McCarthy*, No. C 13-5142 SBA, 2014 WL 3058321, at *2 (N.D. Cal. July 3, 2014) ("Because Plaintiff filed the instant motion for leave to amend after [the deadline to amend the complaint or join parties], it must first demonstrate good cause under Rule 16 for its belated motion." (citing *Johnson*, 975 F.2d at 608)); *Lil' Man in the Boat, Inc. v. City and County of San 5 Francisco*, No. 17-cv-00904-JST, 2019 WL 1756347, at *2 (finding that plaintiff's motion was controlled by Rule 16 where the "Court previously set . . . the deadline to amend the pleadings and the present motion [for leave to amend] was filed a year-and-a-half after that date") (citation omitted).

To demonstrate good cause under Rule 16, the party seeking leave to amend must "show it was diligent in assisting the Court to create a workable schedule at the outset of litigation, that the scheduling order imposes deadlines that have become unworkable notwithstanding its diligent efforts to comply with the schedule, and that it was diligent in seeking the amendment once it became apparent that extensions were necessary." *Adobe Sys. Inc. v. Coffee Cup Partners, Inc.*, No. 11-cv-2243-CW, 2012 WL 3877783, at *6 (N.D. Cal. Sept. 6, 2012) (citation omitted); *Winding v. Allstate Ins. Co.*, No. CIV. 2:09-cv-3526 FCD KJN, 2011 WL 836442, at *1 (E.D. Cal. March 3, 2011). Plaintiffs have not met this burden. They do not "offer any explanation for their failure to amend their complaints earlier" and make no assertion that they were diligent in seeking amendment. *Coleman v. Quaker Oats*, 232 F.3d at 1295. Thus, they fail to demonstrate good cause for the court to "deem the [CAC] amended to include the Churn Statement[s]." ECF No. 476 at 12. Because Plaintiffs neither alleged the Churn Statements in their CAC nor demonstrate

---

[2] Plaintiffs assert that the Churn Statements were "addressed in the parties' summary judgment briefing." ECF No. 476 at 6, 12. Defendants respond that "[n]either Defendants nor the Court construed Plaintiffs' passing reference to that statement as an argument that the statement itself was false or misleading." ECF No. 484 at 11. The Court assumes for the sake of argument that the Churn Statements were raised in Plaintiffs' summary judgment opposition and that this inclusion of new statements constituted a request for leave to amend the complaint. *See Kaplan v. Rose*, 49 F.3d at 1370.

6

good cause to amend the complaint, the Court finds that Plaintiffs are precluded from asserting the Churn Statements as a basis for liability at trial.  *See Kaplan v. Rose*, 49 F.3d at 1370 (9th Cir. 1994); *Kaplan v. Charlier*, 2008 WL 11351439, at *2.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to preclude Plaintiffs' unpled allegations.

**IT IS SO ORDERED.**

Dated:  May 19, 2020



JON S. TIGAR
United States District Judge