1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ROBERT ROSS,<br><br>                Plaintiff,<br><br>   v.<br><br>AT&T MOBILITY LLC,<br><br>                Defendant. | CASE NO. 4:19-CV-06669 (JST)<br><br>**STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |

# STIPULATED ORDER ON THE DISCOVERY OF ELECTRONICALLY STORED INFORMATION

Pursuant to this Court's May 19, 2020 order, Plaintiff Robert Ross ("Mr. Ross") and Defendant AT&T Mobility LLC ("AT&T") hereby submit this Stipulated Order on the Discovery of Electronically Stored Information.

**1. PURPOSE**

This Order will govern discovery of electronically stored information ("ESI") in this case, *Ross v. AT&T Mobility, LLC* (No. 4:19-CV-06669), as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

**2. COOPERATION**

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

**3. LIAISON**

The Parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The Parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

**4. PRESERVATION**

The Parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the Parties agree that:

a) Only ESI created or received between January 1, 2018, and the present will be preserved; <u>provided</u> that if a party maintains responsive ESI for a greater period, nothing in this

stipulation will relieve that party of any obligation it has to produce such ESI, if such obligation would otherwise exist under the Federal Rules of Civil Procedure;

　　　　b)　　Nothing in this stipulation waives any objection to the discoverability or admissibility of any document or other material requested in discovery;

　　　　c)　　The Parties will exchange a list of the types of ESI they believe should be preserved and the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved, e.g., "HR head," "scientist," and "marketing manager."  The Parties shall add or remove custodians as reasonably necessary;

　　　　d)　　The Parties will agree on the number of custodians per party for whom ESI will be preserved;

　　　　e)　　The Parties have not currently identified any data sources that are likely to contain relevant information yet are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B).  The Parties will meet and confer over their obligations to preserve and produce information from such sources if such sources are identified in the future.

**5.　　SEARCH**

The Parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

**6.　　PRODUCTION FORMATS**

**A.　　Digitized Paper Documents**

　　　　i.　　Documents originally in paper or physical form will be digitized into single- page, group IV (G4) format, black and white TIFF TIFF images, group IV format, 300 dots per inch ("dpi").  Color scans of such documents will be made available on reasonable request if the originals of such documents included color content.

　　　　ii.　　Every filename will match the document's Bates number, and will be zero padded with no blank spaces, e.g., D_000000001 (Defendants' Bate Stamp Page 1), P_000820009 (Plaintiffs' Bate Stamp Page 000820009).  This does <u>not</u> preclude the parties from using appropriate designations for supplemental, corrected, or one-off productions.  Per sub-paragraph (iii), below, documents originally

in paper or physical form will be produced in a logically unitized form, rather than as individual per-page images;

    iii.    Absent special circumstances, when scanning paper documents, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records (*i.e.*, paper documents should be logically unitized). In addition, organized compilations of separate paper documents must be produced as they existed in the normal course of business with information that identifies the folder (or container) structure, including with proper coding of the beginning and ending document and attachment fields, to the extent such structure exists and to the extent reasonably possible.

    iv.    The Parties will include with each production delivery an archival image link file as agreed (i.e., an Opticon (.OPT) file or LFP).

    v.    The Parties will include standard Concordance default delimited text files as agreed in .DAT or similar format and will include all available fielding data, including but not limited to beginning and ending Bates numbers, beginning and ending attachment numbers, and number of pages except where otherwise agreed.

    vi.    The Parties will apply Optical Character Recognition ("OCR") software to all applicable documents and create OCR-searchable files in .TXT format for each page digitized as in (i) above; filenames for .TXT files will synchronize with/be identical to the filename for the corresponding TIFF file. Delivery of TIFF files will be accompanied by a corresponding document-level OCR text file. The file name of each OCR text file shall be named identical to that of the first image page of its corresponding document, followed by .txt.

**B.**    <u>Documents Originating Electronically</u>

    Except as otherwise noted herein or agreed on by the Parties, and notwithstanding any format provisions in a Party's discovery requests, ESI will generally be produced in conformance with the specifications detailed below. The Parties agree to produce documents in a combination of PDF, TIFF, and/or native file formats as may be agreed among the parties from time to time. The Parties agree to continue to confer regarding the file format appropriate to particular documents. All attachments,

addendums, enclosures, or exhibits to parent documents will be produced and identified as they relate to the respective parent document.

      i.    **System Files.** Common system and program files, as defined by the NIST library (which is commonly used by e-discovery vendors to exclude system and program files from document review and production), need not be processed, reviewed or produced. Each Party may use commercially reasonable culling methods to filter out common system and program files, including a hash identification process.

      ii.    **De-Duplication.** A party is only required to produce a single copy of a responsive document, and a Producing Party shall de-duplicate responsive ESI across custodians by the use of MD5 or SHA-1 hash values at the parent level. All agreed-upon custodians who were in possession of a de-duplicated document shall be identified in the "DUPLICATECUSTODIAN" metadata field to the extent reasonably possible. Custodians shall be identified using the convention "last name_first name" or "last name, first name," where applicable. Entity or departmental custodians shall be identified with a description of the entity or department. A Producing Party shall use a uniform description of a particular custodian across productions. Multiple custodians in the "DUPLICATECUSTODIAN " field shall be separated by a semicolon. Attachments shall not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also exact duplicates of another family, and parent-child relationships shall be preserved as part of any de-duplication. Hard copy documents shall not be eliminated as duplicates of responsive ESI. If, during the course of its review, the Producing Party identifies additional duplicate documents, the Parties reserve their rights to use a custom de-duplication protocol and must disclose use of such a de-duplication protocol to the other Party prior to implementing any such custom de-duplication protocol. The Parties reserve their right to object to any such custom de-duplication protocol.

      iii.    **Parent-Child Relationships**. Parent-child relationships (i.e., the association between an attachment and its parent document) must be preserved if reasonably possible (and to the extent the parent-child relationship is reasonably apparent) and coded appropriately. For example, electronic documents attached to an email are to be produced contemporaneously and sequentially, immediately after the parent document. Similarly, if a Party produces a document with attachments, appendices, or

indices, those documents shall be produced behind the document in the order in which they were attached.

      iv. **Metadata Fields and Processing.** To the extent reasonably available and accessible, the metadata fields listed in Appendix A shall be produced.

      v. **Extracted Text Files.** For each document produced in TIFF format, an extracted text file shall be provided along with its corresponding TIFF image file(s) and metadata. The file name of each extracted text file shall be identical to that of the first image page of its corresponding document, followed by .txt. Text from all pages of the document will be included in the single document-level file. File names shall not contain any special characters or embedded spaces. The text of native files shall be extracted directly from the native file. However, if a document is produced with redactions, OCR of the redacted document will suffice in lieu of extracted text.

      vi. **Database Load Files and Cross-Reference Files.** Accompanying each production shall be a metadata file (DAT file) using standard Concordance delimiters. Each production shall also include an image load file in Opticon format (OPT). The metadata file and image load file (i.e., DAT and OPT files) shall be provided in a self-identified "Data" folder.

      vii. **Native Files**. Absent special circumstances, source code, large diagrams, Excel files, .csv files, and other files that cannot conveniently be produced as TIFF images shall be produced in native format ("Native Files"), unless they have redactions, in which case they shall be produced as TIFF images with OCR of the redacted document. Native Files shall be provided in a self-identified "Natives" directory. Each Native File shall be produced with a corresponding single-page TIFF placeholder image, which will contain language indicating that the document is being produced as a Native File. Native Files shall be named with the beginning Bates number that is assigned to the specific record of the TIFF placeholder in the production. A "NativeLink" entry for each spreadsheet shall be included in the .DAT load file indicating the relative file path to each Native File on the production media. Native Files shall be produced with extracted text and applicable metadata fields as set forth in Appendix A. If a document to be produced as a Native File contains privileged information or information protected by privacy laws, the document will be redacted to the extent reasonably and technically possible. Any metadata fields for redacted documents that would reveal privileged

information shall be excluded. Each Producing Party will make reasonable efforts to ensure that its e-discovery vendor, before conversion to TIFF, reveals hidden data from redacted Native Files that are produced as TIFF image files and will be formatted so as to be readable. (For example, in Excel files, column widths shall be formatted so that the content does not appear as "##########.") The parties shall meet and confer in good faith as to any other hidden data, *e.g.*, formulas, macros, or underlying data sets, that are not accessible in a TIFF image file. To the extent documents that fall under this section contain privileged information or information protected by privacy laws and cannot be redacted or produced with TIFF image files, such documents will be logged on a privilege log. The Producing Party shall exercise reasonable, good faith efforts to maintain all collected Native Files that may be relevant in a manner that does not materially alter or modify the file or the metadata, other than as provided.

      viii.   **Structured Data.** To the extent that responding to a discovery request requires production of ESI contained in a database, the Parties shall meet and confer to address the appropriate data extraction and production format for specific information contained in a database.

      ix.   **Text Messages, Chats, and Instant Messenger Conversations.** Text message, chats, and instant messenger conversations, to the extent their content can be determined to be responsive, and to the extent the Parties agree to produce such files if any exist, will be produced in a reasonably usable form as may be agreed upon by the Parties.

      x.   **Audio Files and Video Files.** Audio and video files, to the extent their content can be determined to be responsive, and to the extent the Parties agree to produce such files if any exist, will be produced in a reasonably usable form as may be agreed upon by the Parties.

**C.**   <u>**Production Media**</u>

Documents shall be exchanged through secure file transfer protocols (e.g., SFTP), or similar secure electronic transmission. The production shall be labeled with the Volume Number along with the Bates Number range(s) of the materials. Any document production that may contain "non-public personal information" shall be produced in encrypted form. If a Producing Party encrypts or "locks"

the production, the Producing Party shall simultaneously send, under separate cover, an explanation of how to decrypt the files and any credentials necessary to do so.

**7.     PHASING**

When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the Parties agree to meet and confer regarding any request from the Requesting Party that ESI be phased such that the initial production comes from particular sources and custodians in order to facilitate alternative dispute resolution procedures or for other reasons.

**8.     DOCUMENTS PROTECTED FROM DISCOVERY**

a)     In accordance with Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding.  For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

b)     Occasions of inadvertent production shall be addressed pursuant to Paragraph 11 of the Parties' stipulated protective order.

c)     Communications involving trial counsel that post-date the filing of the complaint need not be placed on a privilege log.  Communications may be identified on a privilege log by category, rather than individually, if appropriate.

**9.     NO WAIVER**

Matters not addressed in this protocol shall not be deemed waived.  Rather, any such matters shall be addressed by the Parties at a later time through additional meeting and conferring, and, if necessary, submitted to the Court for resolution.

**10.    MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

IT IS SO STIPULATED, through Counsel of Record.

Gibson, Dunn & Crutcher LLP

7
STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION
CASE NO. 4:19-CV-06669 (JST)

Dated: May 29, 2020

        MARCELLUS MCRAE  
        ASHLEY E. JOHNSON  
        GIBSON, DUNN & CRUTCHER LLP


By: /s/ *Ashley E. Johnson*
      Ashley E. Johnson

Attorneys for Defendant AT&T MOBILITY, LLC

Dated: May 29, 2020    CHRISTOPHER GRIVAKES  
        DAMION ROBINSON  
        AFFELD GRIVAKES LLP


By: /s/ *Damion Robinson*
      Damion Robinson

Attorneys for Plaintiff ROBERT ROSS

Local Rule 5-1(i) attestation:

Pursuant to Local Rule 5-1(i), I, Ashley E. Johnson, attest that concurrence in the filing of this document was obtained from the other signatory to this document.

**IT IS ORDERED** that the foregoing Agreement is approved.

Dated: June _1_, 2020

_____  
United States District Judge Jon S. Tigar

* Pursuant to ¶ B above, the Parties agree to include in their production load files the information set forth and explained in the following Metadata Table, if available:

## APPENDIX A

| Field Name | Sample Data | Description |
| --- | --- | --- |
| PRODBEG | P000000222 | First Bates number of native file document/email |
| PRODEND | P000000222 | Last Bates Number of native file document/email (single-page documents will list beginning and ending Bates number) |
| PRODBEGATTACH | P000000222 | First Bates number of attachment range |
| PRODENDATTACH | P000000229 | Last Bates number of attachment range |
| ATTACH_RANGE | P000000222- P000000229 | Beginning Bates number of parent document through ending Bates number of last attachment/child Document |
| CUSTODIAN | Adams, John; johnadams@1776.gov | Email: mailbox in which the file was located Native: Individual who originated the document |
| DUPLICATE CUSTODIAN | Franklin, Ben; Hancock, John; Whipple, William | When global de-"duplicating has been employed, the custodians who had duplicates of the identical document |
| FROM | Adams, John | Email author/sender |
| TO | Hancock, John [mailto: HANCOCK@JOHNHANCOCK.com] | Recipient(s) of email separated by semicolon |
| CC | Franklin, Ben [mailto: bennyf@1776.com] | Carbon copy recipient(s) of email |
| BCC | N/A | Blind carbon copy recipient(s) of Email |
| SUBJECT | Declaration w/ edits | Email: subject line Native: document title |
| DATE_SENT | 7/3/1776 | Email: date the email was sent |
| TIME_SENT | 12:59 AM | Email: time at which email was sent on date in date field |
| DATE_RECEIVED | | Received date of an email message (mm/dd/yyyy 12:00 format) |

| Field Name | Sample Data | Description |
| --- | --- | --- |
| NATIVE_LINK | D:\1969\ P000000222.MSG | Hyperlink to web address, named uniformly with first bates of parent Document |
| FILE_EXTEN | i.e., MSG, DOCX, PDF, etc. | File extension of email or native Document |
| FILESIZE | 100 KB | File size of the email or native Document |
| FILENAME | Declaration w/ edits.docx | Name of the original native file, including extension |
| AUTHOR | Jefferson, Thomas | Author of native document (MS Word, etc.) |
| DATE_CREATED | 6/1/2009 | Date native document was created |
| DATE_MODIFIED | 10/12/2010 | Date native document was last modified |
| PGCOUNT | 1 | Total pages of each original document/email |
| TEXT LINK | D:\1969\ P000000222.txt | UNC path to text files of extracted/OCR text (unless redacted) |
| HASHCODE | E4d909c290d0fb1ca068ffaddf22cb d0 | Hash code created for file in connection with deduplication (e.g., MD5/SHA-1) |
| PROD VOLUME | | Identifies production media deliverable |
| CONFIDENTIALITY | | Identifies the confidentiality designation of the file. Field will be blank for documents with no confidentiality designation. |
| REDACTED | | "Yes," for redacted Discovery Materials; otherwise, blank |