CHRISTOPHER GRIVAKES
  cg@agzlaw.com
DAMION ROBINSON
  dr@agzlaw.com
AFFELD GRIVAKES LLP
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Telephone: 310.979.8700
Facsimile: 310.979.8701

Attorneys for Plaintiff ROBERT ROSS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ROBERT ROSS,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>AT&T MOBILITY LLC,<br><br>　　　　　Defendant. | CASE NO. 4:19-CV-06669 (JST)<br><br>**NOTICE OF MOTION AND MOTION TO FILE FIRST AMENDED COMPLAINT; POINTS AND AUTHORITIES**<br><br>Date: September 30, 2020<br>Time: 2:00 p.m.<br>Place: Courtroom 6 |

# TABLE OF CONTENTS

NOTICE OF MOTION ............................................................................................................... 1
POINTS AND AUTHORITIES ................................................................................................. 3
I. INTRODUCTION ................................................................................................................... 3
    A.    There Is Good Cause To Add The One Touch Entities ............................. 3
    B.    There Is Good Cause To Add Additional Claims ..................................... 3
II. STATEMENT OF FACTS ................................................................................................... 5
III. ARGUMENT ........................................................................................................................ 7
    A.    Legal Standard ............................................................................................. 7
    B.    Amendment to Add Parties ........................................................................ 8
    C.    Amendment to Add Claims ........................................................................ 9
IV. CONCLUSION ................................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adams v. City of Indianapolis*
(7th Cir. 2014) 742 F3d 720 ................................................................................................. 11

*Alioto v. Town of Lisbon*
(7th Cir. 2011) 651 F.3d 715 .................................................................................................. 8

*American Family Mut. Ins. Co. v. Hollander*
(8th Cir. 2013) 705 F.3d 339 .................................................................................................. 7

*AmerisourceBergen Corp. v. Dialysist West, Inc.*,
465 F.3d 946 (2006) .............................................................................................................. 10

*Bailey v. Bayer CropScience L.P.*
(8th Cir. 2009) 563 F.3d 302 .................................................................................................. 8

*Bowles v. Reade*
(9th Cir. 1999) 198 F.3d 752 ................................................................................................ 10

*Carrico v. City & County of San Francisco*
(9th Cir. 2011) 656 F3d 1002 ............................................................................................... 11

*Doe v. Superior Court (First Baptist Church)*,
237 Cal.App.4th 239 (2015) ........................................................................................ 4, 8, 11

*Eminence Capital, LLC v. Aspeon, Inc.*
(9th Cir. 2003) 316 F.3d 1048 .............................................................................................. 11

*Eminence Capital, LLC v. Aspeon, Inc.*
(9th Cir. 2003) 316 F.3d 1048 .......................................................................................... 7, 10

*FDIC v. Conner*
(5th Cir. 1994) 20 F3d 1376 ................................................................................................. 11

*Filgueira v. U.S. Bank Nat'l Ass'n*
(5th Cir. 2013) 734 F.3d 420 .................................................................................................. 8

*Foman v. Davis*
(1962) 371 US 178 ............................................................................................................. 7, 9

*Hensgens v. Deere & Co.*
    (5th Cir. 1987) 833 F.2d 1179 .................................................................................8

*HSBC Realty Credit Corp. (USA) v. O'Neill*
    (1st Cir. 2014) 745 F3d 564...................................................................................11

*Invest Almaz v. Temple-Inland Forest Products Corp.*
    (1st Cir. 2001) 243 F.3d 57....................................................................................10

*Johnson v. Mammoth Recreations, Inc.*
    (9th Cir. 1992) 975 F.2d 604 ..................................................................................8

*Lone Star Ladies Invest. Club v. Schlotzsky's Inc.*
    (5th Cir. 2001) 238 F.3d 363 ..................................................................................7

*Lone Star Ladies Invest. Club v. Schlotzsky's Inc.*
    (5th Cir. 2001) 238 F3d 363 .................................................................................10

*Marucci Sports, L.L.C. v. National Collegiate Athletic Ass'n*
    (5th Cir. 2014) 751 F3d 368 .................................................................................11

*Minter v. Prime Equipment Co.,*
    451 F.3d 1196 (2006) ............................................................................................10

*Missouri Housing Develop.Comm'n v. Brice*
    (8th Cir. 1990) 919 F2d 1306 ...............................................................................10

*Moore v. Baker*
    (11th Cir. 1993) 989 F.2d 1129 ..............................................................................7

*Moore v. Kayport Package Express, Inc.*
    (9th Cir. 1989) 885 F.2d 531 ..................................................................................9

*Price v. Pinnacle Brands, Inc.*
    (5th Cir. 1998) 138 F.3d 602 ..................................................................................9

*Rich v. Shrader*
    (9th Cir. 2016) 823 F.3d 1205 ..............................................................................10

*Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Northwest Indiana* (7th Cir. 2015) 786 F.3d 510...................................................................7

*Sonoma County Ass'n of Retired Employees v. Sonoma County*
    (9th Cir. 2013) 708 F.3d 1109 .......................................................................7, 8, 9

*Sonoma County Ass'n of Retired Employees v. Sonoma County*
 (9th Cir. 2013) 708 F.3d 1109 ...................................................................................... 10

*Union Pac. R.R. Co. v. Nevada Power Co.*
 (9th Cir. 1991) 950 F.2d 1429 ........................................................................................ 9

*In re Yahoo! Inc. Customer Data Security Breach Litigation*,
 313 F.Supp.3d 1113 (2018) ...................................................................................... 4, 11

*Ynclan v. Department of Air Force*
 (5th Cir. 1991) 943 F.2d 1388 ........................................................................................ 7

**Other Authorities**

FRCP 15(a)(2) ............................................................................................................... 7, 10

FRCP 16(b)(4) .................................................................................................................... 8

# NOTICE OF MOTION

PLEASE TAKE NOTICE that on September 30, 2020 at 2:00 p.m. in Courtroom 6 of the above-entitled Court, Plaintiff Robert Ross ("Ross") will and hereby moves the Court for an Order granting him the right to file a First Amended Complaint (i) to add new defendants One Touch Direct, LLC ("One Touch") and One Touch Direct - San Antonio, LLC ("One Touch-SA," and together with One Touch, the "One Touch Entities"), and (ii) a claim for punitive damages against AT&T in the existing negligence count, and a new count for fraudulent concealment.

This motion is made pursuant to Rule 15(a)(2) and 16(b)(4) of the Rules of Federal Procedure on the grounds that there is good cause for the proposed amendments, as follows:

1. Ross first learned of the existence of "One Touch Direct" *after* June 4 when AT&T served its Initial Disclosures on June 5, 2020. Since AT&T's Disclosures simply referred to "One Touch Direct" without disclosing the legal name or address of either One Touch entity, and failed to disclose that there were two One Touch entities, Ross had to conduct an investigation to determine the identities of the entities and the details of their relationships to AT&T.

2. Ross's ongoing investigation recently revealed that AT&T has mismanaged its call centers, could have implemented several low-cost and readily technology solution to prevent his SIM swap, but instead elected to profit from the SIM swap problem by focusing its efforts on developing and marketing a technology solution to financial institutions (for a fee) to prevent the theft of funds *after* an unauthorized SIM swap has occurred (which scheme was launched before Ross's SIM swap, and which scheme has not been adopted by any financial institutions). These facts support a claim for punitive damages in the existing negligence count, as well as a new claim for fraudulent concealment given the special relationship between AT&T and Ross.

DATED: August 25, 2020

CHRISTOPHER GRIVAKES
AFFELD GRIVAKES LLP


By: /s/ *Christopher Grivakes*
            Christopher Grivakes

Attorneys for Plaintiff ROBERT ROSS

# POINTS AND AUTHORITIES

## I.     INTRODUCTION

There is good cause to add as defendants AT&T's third-party call center that handled Ross's SIM swap, and to add a claim for punitive damages in the existing negligence count as well as a new count for fraudulent concealment, as set forth below.

### A.     There Is Good Cause To Add The One Touch Entities

Ross could not have filed this motion before the Scheduling Order because he had no way of knowing that AT&T contracted with One Touch for third party call center services, and that an employee of One Touch-SA (a subsidiary of One Touch) effected his SIM swap.

Ross first learned *after* the June 4 deadline set forth in the Scheduling Order that AT&T's third-party call center had effected the unauthorized SIM swap on his phone. Ross discovered the existence of the call center when AT&T served its Initial Disclosures on June 5, 2020.  Moreover, since AT&T's Disclosures simply referred to "One Touch Direct" without disclosing the legal name or address of any One Touch entity, or that there were two One Touch entities, Ross had to conduct an investigation to determine the identities of the entities and the details of their relationships to AT&T. Ross then sent a draft of the FAC to AT&T along with a proposed Stipulation to permit the amendment, learned that AT&T was willing to stipulate to the amendment but intended to challenge the pleading, and thereafter revised the proposed FAC to address AT&T's anticipated pleading challenges before filing this motion.

### B.     There Is Good Cause To Add Additional Claims

During his investigation and research related to AT&T's use of third-party call centers, Ross discovered additional facts which form the bases for his request to add punitive damages allegations to the existing negligence count, and to add a count for fraudulent concealment.  In short, AT&T was far more than simply negligent, and acted with reckless and conscious disregard of the risks posed to its customers, based on the following: (i) AT&T grossly mismanaged its third-party call centers, (ii) AT&T

refused to implement low-cost and readily available technology solutions across its call centers that would have thwarted the unauthorized SIM swap on Ross' phone, (iii) AT&T made the strategic decision to try to profit from the SIM swap problem by developing and marketing a solution (which it calls ZenKey) to financial institutions to prevent the theft of funds *after* an unauthorized SIM swap has occurred, and (iv) AT&T disregarded the dire consequences to its customers such as Ross while gambling that ZenKey would find broad acceptance in the marketplace (ZenKey has not been adopted by any financial institutions).

These facts show that AT&T had a reckless and conscious disregard for its customers. A negligence count will support a claim a claim for punitive damages when there is a reckless and conscious disregard. *In re Yahoo! Inc. Customer Data Security Breach Litigation*, 313 F.Supp.3d 1113, 1149 (2018) ("even where the claim formally sounds in negligence, if the plaintiff can make a showing that defendant's conduct goes beyond gross negligence and demonstrates a knowing and reckless disregard, punitive damages *may* be available.").

In addition, a claim for fraudulent concealment may lie where there is a "special relationship" between the parties. *Doe v. Superior Court (First Baptist Church)*, 237 Cal.App.4th 239 (2015) (special relationship supported claim for fraudulent concealment). Since the Court has already found that a special relationship exists between AT&T and Ross, the claim for fraudulent concealment based on AT&T's failure to disclose that it would not implement available solutions, and instead would seek to profit from the problem, is a plausible and viable claim.

Ross did not know the foregoing facts when he filed his original Complaint, and it was only through the process of his ongoing investigation that he discovered them. There was no undue delay, there is no undue prejudice to AT&T, there is no dilatory motive, and there is substantial merit to the claims. The addition of these claims is consistent with the mandate of Rule 15 that leave to amend should be freely given "when justice so requires."

## II.   STATEMENT OF FACTS

On May 19, 2020, the Court issued its Scheduling Order (Docket No. 42).  The Order provides that new parties may only be added after June 4, 2020 for good cause.

On June 5, 2020, AT&T served its Initial Disclosures ("Disclosures").  Declaration of Christopher Grivakes ("Grivakes Decl.," ¶ 2).  AT&T's Disclosures refer to "One Touch Direct."   The Disclosures do not provide the legal name, address, or role of either of the One Touch entities, and do not specify that there were two One Touch entities involved.  Id. at ¶ 3.

AT&T's Disclosures were the first time Ross learned that AT&T had contracted with a third-party call center that effected the SIM swap on Ross' phone.  Id. at ¶ 4.  After learning that "One Touch Direct" was involved, Ross conducted an investigation, learned the legal names of the One Touch Entities, and discovered that they maintain an insurance policy which apparently covers a portion of the claims and a part of the damages asserted in the Complaint.  Id. at ¶ 5.

On July 29, 2020, Ross sent AT&T a proposed FAC which added the One Touch Entities, along with a proposed Stipulation and Order to add them as parties.  Id. at ¶ 6.

On August 5, 2020, AT&T informed Ross that it agreed to the proposed Stipulation and Order, but that it reserved the right to challenge the proposed pleading, and requested revisions to the proposed Order to reflect that intention.  Id. at ¶ 7.

AT&T's intention to challenge the pleadings caused Ross to conduct further research and investigation into the possible grounds for AT&T's intended pleading challenges and revise the proposed FAC to address the anticipated pleading challenges, and to add his new claims.  Id. at ¶ 7.  Ross's investigation led to his discovery of new factual allegations relating to the following:

- AT&T's control of its independent call centers, and mismanagement of its call centers. (FAC, ¶¶ 15-17, 98).
- AT&T's refusal to implement low cost and readily available solutions

which would have prevented Ross's unauthorized SIM swap, including (i) sending a confirming text to Ross's phone to determine whether he had authorized the SIM swap (Ross would have replied "No"), (ii) location tracking (AT&T knew that Ross's phone was in San Francisco, and that the request for the SIM swap came from New York), (iii) IMEI tracking (AT&T knew that the hacker's phone was used to make 11 prior SIM swap requests before targeting Ross), and/or (iv) voice biometrics for authentication (used by numerous U.S. banks and a large European telco). (FAC, ¶¶ 99 a.-f., 100).

- AT&T strategic choice to profit from the SIM swap problem (rather than fixing it) by focusing its efforts on developing and marketing to financial institutions (for a fee) the ZenKey technology solution to prevent the theft of funds *after* an unauthorized SIM swap has occurred. ZenKey has failed in the marketplace, and AT&T's reckless gamble to profit from a post-SIM swap solution has been an ongoing detriment to customers since the ZenKey scheme was launched over two years ago (and *before* the SIM swap on Ross's phone). (FAC, ¶¶ 101-103).

On August 17, 2020, Ross sent AT&T a revised proposed FAC which not only added new parties but also added the new claims against AT&T and Stipulation. Id. at ¶ 10.

On August 25, 2020, AT&T informed Ross that it would not enter a Stipulation relating to the revised proposed FAC. Id. at ¶ 11. AT&T's rationale is that the new claims (as opposed to the new parties) "are based on allegations that could have been included in the initial complaint." Id. at Exhibit 1.

Attached to the supporting Declaration of Christopher Grivakes are red-lined and clean versions of the proposed FAC. Id. at Exhibits 2 and 3.

## III.   ARGUMENT

### A.   Legal Standard

Leave to amend should be freely given "when justice so requires." FRCP 15(a)(2); *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Northwest Indiana* (7th Cir. 2015) 786 F.3d 510, 519-520.  Federal policy strongly favors determination of cases on their merits. Therefore, the role of pleadings is limited, and leave to amend the pleadings is freely given unless the opposing party makes a showing of undue prejudice, or bad faith or dilatory motive on the part of the moving party. *Foman v. Davis* (1962) 371 US 178, 182.; *Sonoma County Ass'n of Retired Employees v. Sonoma County* (9th Cir. 2013) 708 F.3d 1109, 1117.

The liberal standard for permitting amendment "is especially important where the law is uncertain." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Northwest Indiana*, supra, 786 F.3d at 520, 523 (liberal amendment standard needed "in the face of uncertain pleading standards after *Twombly* and *Iqbal*.").

The policy favoring leave to amend is "a necessary companion to notice pleading and discovery." *Lone Star Ladies Invest. Club v. Schlotzsky's Inc.* (5th Cir. 2001) 238 F.3d 363, 367.  The policy is to be applied with "extreme liberality." *Sonoma County Ass'n of Retired Employees v. Sonoma County* (9th Cir. 2013) 708 F.3d 1109, 1117; see *American Family Mut. Ins. Co. v. Hollander* (8th Cir. 2013) 705 F.3d 339, 348 (the "goal of Rule 15(b) is to promote the objective of deciding cases on the merits rather than on the relative pleading skills of counsel"); *Eminence Capital, LLC v. Aspeon, Inc.* (9th Cir. 2003) 316 F3d 1048, 1051; *Moore v. Baker* (11th Cir. 1993) 989 F.2d 1129, 1131 ("a justifying reason must be apparent for denial of a motion to amend.").  Thus, while "leave to amend should not be granted automatically," the circumstances under which Rule 15(a) "permits denial of leave to amend are limited." *Ynclan v. Department of Air Force* (5th Cir. 1991) 943 F.2d 1388, 1391.

### B. Amendment to Add Parties

"Good cause" must be shown to add a new party after a scheduling order has been issued. FRCP 16(b)(4); *Johnson v. Mammoth Recreations, Inc.* (9th Cir. 1992) 975 F.2d 604, 609; *Alioto v. Town of Lisbon* (7th Cir. 2011) 651 F.3d 715, 719-720 (collecting cases from several circuits); *Filgueira v. U.S. Bank Nat'l Ass'n* (5th Cir. 2013) 734 F.3d 420, 422.

In deciding good cause, the factors considered include: (i) whether joinder of the nondiverse party is sought to defeat federal jurisdiction; (ii) whether plaintiff has been dilatory in asking for amendment; and (iii) whether plaintiff will be significantly injured if amendment is not allowed. *Hensgens v. Deere & Co*. (5th Cir. 1987) 833 F.2d 1179, 1182; *Bailey v. Bayer CropScience L.P.* (8th Cir. 2009) 563 F.3d 302, 309. "Courts may decline to grant leave to amend only if there is strong evidence of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc.'" *Sonoma County Ass'n of Retired Employees v. Sonoma County*, supra, 708 F.3d at 1117 (brackets in original) (quoting *Foman v. Davis* (1962) 371 US 178, 182.

There is good cause to add the One Touch Entities here. *First*, Ross has been diligent about adding them. AT&T's disclosure of their existence came one day after the deadline set forth in the Scheduling Order. Ross could not have discovered their identities any sooner. Furthermore, AT&T's disclosure was vague, referring only to "One Touch Direct," and not to any specific legal entities. Ross confirmed the identities of the specific entities and their roles only after speaking with counsel for the One Touch Entities. Ross has not delayed in seeking to add the One Touch Entities as parties. After learning their identities, he approached AT&T and sought its agreement to add them as parties, and after learning that AT&T intended to challenge the FAC based solely on adding them as parties, conducted further research, investigation and discovery with respect to AT&T's anticipated pleading challenges and prepared a

revised FAC.  *Second*, Ross will be prejudiced if he cannot add the entities that actually performed the unauthorized SIM swap om his phone.  *Third*, there is no possible prejudice to AT&T with respect to adding the One Touch Entities.

### C. Amendment to Add Claims

"Amendments seeking to add *claims* are to be granted more freely than amendments adding *parties*." *Union Pac. R.R. Co. v. Nevada Power Co.* (9th Cir. 1991) 950 F.2d 1429, 1432 (emphasis added).

There is good cause to add a punitive damages claim to the existing negligence count, and to add a new count for fraudulent concealment, as the factual bases for these additions were only recently discovered, Ross promptly sought leave to amend, AT&T cannot demonstrate prejudice, and the case should be decided on the merits of thr facts.

Courts have identified the following factors that may justify denial of leave to amend:  undue delay; bad faith or dilatory motive; futility of amendment; prejudice to the opposing party; and repeated failure to cure deficiencies by previous amendments. *Price v. Pinnacle Brands, Inc.* (5th Cir. 1998) 138 F.3d 602, 608; *Moore v. Kayport Package Express, Inc.* (9th Cir. 1989) 885 F.2d 531, 538; see *Foman v. Davis*, supra, 371 US at 182.  The Ninth Circuit has held, however, that courts may decline to grant leave to amend for one or more of these reasons "only if there is strong evidence." *Sonoma County Ass'n of Retired Employees v. Sonoma County* (9th Cir. 2013) 708 F.3d 1109, 1117. None of those factors exists here.

#### 1. There was no undue delay or bad faith/dilatory motive

Ross has not engaged in undue delay, and his motion is not in bad faith or for a dilatory motive.  This motion to amend is being brought within a few short weeks of the discovery of the additional facts which form the basis for the claims.  Those facts were discovered during his ongoing investigation and discovery into the SIM swap problem, the available solutions, and AT&T's approach to finding solutions.

Most courts hold delay alone is *not* enough to support denial of a motion for leave to amend. Rather, there must be a showing of "*prejudice* to the opposing

party, *bad faith* by the moving party, or *futility* of amendment." *Bowles v. Reade* (9th Cir. 1999) 198 F.3d 752, 758 (emphasis added).  However, if the delay is *egregious* and *unexplained*, it may provide the basis for denial of leave to amend.  See *Rich v. Shrader* (9th Cir. 2016) 823 F.3d 1205, 1209-1210 (plaintiff denied leave to amend "after years of discovery" and "a grant of summary judgment for the defendants"); *Minter v. Prime Equipment Co.*, 451 F.3d 1196 (2006) (leave denied where requested "just three weeks before the scheduled start of trial"  after the "first five years of this litigation"); *Invest Almaz v. Temple-Inland Forest Products Corp.* (1st Cir. 2001) 243 F.3d 57, 72 (leave denied at close of plaintiff's case); *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 953 (2006) (leave to amend denied where facts known 15 months before motion, involving "drastically changed its litigation theory"). In addition, established secondary authority maintains that "[i]t is debatable" whether an amendment should be denied solely because the moving party "should have known" the facts earlier because this seems "inconsistent with the mandate of FRCP 15(a)(2)" that leave to amend be freely given "when justice so requires."  Rutter Group Prac. Guide, Fed. Civ. Pro. Before Trial, Calif. and 9th Cir. Ed., 8:1504.

### 2.   There is no prejudice to AT&T

AT&T cannot show prejudice from the proposed amendments.  The addition of a punitive damages claim to the existing negligence count does not impede AT&T's ability to defend the claim.  AT&T has known all along that it has not addressed the SIM swap problem and has instead focused its efforts on a for profit post-SIM swap solution.  "Prejudice is the touchstone of the inquiry under rule 15(a)." *Eminence Capital, LLC v. Aspeon, Inc*. (9th Cir. 2003) 316 F3d 1048, 1052 (internal quotes omitted); *Lone Star Ladies Invest. Club v. Schlotzsky's Inc.*(5th Cir. 2001) 238 F3d 363, 368; *Missouri Housing Develop.Comm'n v. Brice* (8th Cir. 1990) 919 F2d 1306, 1316; *Sonoma County Ass'n of Retired Employees v. Sonoma County* (9th Cir. 2013) 708 F3d 1109, 1117. Indeed, absent prejudice, or a strong showing of any of the remaining reasons for denying leave to amend, "there exists a *presumption* under Rule

15(a) in favor of granting leave to amend." *Eminence Capital, LLC v. Aspeon, Inc.* (9th Cir. 2003) 316 F.3d 1048, 1052 (emphasis in original).

### 3. The proposed new claims are plausible

Ross's proposed new claims are plausible and are not futile. See *Carrico v. City & County of San Francisco* (9th Cir. 2011) 656 F3d 1002, 1008 (leave to amend may be denied when proposed amendment was futile or subject to dismissal); *FDIC v. Conner* (5th Cir. 1994) 20 F3d 1376, 1385. A proposed amendment is futile if it "does not plead enough to make out a plausible claim for relief." *HSBC Realty Credit Corp. (USA) v. O'Neill* (1st Cir. 2014) 745 F.3d 564, 578; *Adams v. City of Indianapolis* (7th Cir. 2014) 742 F3d 720, 734; *Marucci Sports, L.L.C. v. National Collegiate Athletic Ass'n* (5th Cir. 2014) 751 F3d 368, 378.

Ross's claims are fully supported by the substantial additional factual allegations relating to (i) the technology solutions that were readily available to AT&T to prevent his unauthorized SIM swap, and (ii) AT&T's focus on profiting from unauthorized SIM swaps by focusing its efforts on marketing a post-SIM swap solution to financial institutions rather than preventing unauthorized SIM swaps in the first instance by implementing available solutions. These factual allegations are more than sufficient to support a claim for punitive damages based on reckless and conscious disregard. See *In re Yahoo! Inc. Customer Data Security Breach Litigation*, 313 F.Supp.3d 1113, 1149 (2018).

The allegations are also sufficient to support a claim for fraudulent concealment, especially since the Court has already found that AT&T has a "special relationship" with Ross. *Doe v. Superior Court (First Baptist Church)*, 237 Cal.App.4th 239 (2015); see Order on Motion to Dismiss, 24:3 to 25:11 (Docket No. 36). As result, AT&T had a duty to disclose that it would not be implementing the low-cost and readily available SIM swap solutions, and instead was banking on developing and marketing a technology solution to financial institution post-unlawful SIM swap, which has not met with any success in the marketplace, to the continuing detriment of AT&T's

customers.

## IV.  CONCLUSION

For all the foregoing reasons, Ross requests that the Court grant his motion to file the proposed FAC.

DATED: August 25, 2020

CHRISTOPHER GRIVAKES
AFFELD GRIVAKES LLP


By:  /s/ *Christopher Grivakes*
                Christopher Grivakes

Attorneys for Plaintiff ROBERT ROSS

## **PROOF OF SERVICE**

  I hereby certify that on 8/25/2020, I electronically filed the foregoing document using the Court's CM/ECF system. I am informed and believe that the CM/ECF system will send a notice of electronic filing to the interested parties.

                s/ Christopher Grivakes
                Christopher Grivakes