CHRISTOPHER GRIVAKES
 cg@agzlaw.com
DAMION ROBINSON
 dr@agzlaw.com
AFFELD GRIVAKES LLP
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Telephone:  310.979.8700
Facsimile: 310.979.8701

Attorneys for Plaintiff ROBERT ROSS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ROBERT ROSS,<br><br>          Plaintiff,<br><br>     v.<br><br>AT&T MOBILITY LLC,<br><br>          Defendant. | CASE NO. 4:19-CV-06669 (JST)<br><br>**PLAINTIFF'S REPLY TO AT&T'S RESPONSE TO MOTION TO FILE FIRST AMENDED COMPLAINT**<br><br>Date:  October 14, 2020<br>Time:  2:00 p.m.<br>Place:  Courtroom 6 |

Plaintiff ROBERT ROSS ("Ross") hereby submits his Reply to ATT&T Mobility, LLC's ("AT&T") Response to the Motion to File a First Amended Complaint ("FAC").

## I. THERE IS GOOD CAUSE TO ADD NEW DEFENDANTS

There is good cause to amend the Complaint to add the One Touch Entities as defendants since Plaintiff acted with diligence and there is a valid explanation for not seeking leave earlier.

AT&T contends that Plaintiff failed to act with diligence in seeking to amend the Complaint based on the generalized holding of *Johnson v. Mammoth Recreations,* 975 F.2d 604 (9th Cir.1992). In *Johnson*, the defendant gave the plaintiff "clear" and "repeated" signals to add a new defendant -- in a letter from defense counsel which disclaimed involvement of the named defendant expressly detailed the identity of the proper party, in interrogatory responses, and in the answer to the complaint -- *all within the period to amend the complaint*. Under those facts, the *Johnson* court found a lack of diligence.

Courts have addressed situations similar to the one presented here, readily distinguished *Johnson* on its facts, and rejected the same kinds of repeated overgeneralizing of the *Johnson* holding that AT&T relies on throughout its brief. *See*, *e.g.*, *Mytee Products, Inc. v. H.D. Products, Inc.*, 2007 WL 4105713 at * 3 (S.D. Cal. 2007) ("Defendant repeatedly overgeneralizes *Johnson v. Mammoth Recreations,* 975 F.2d 604 (9th Cir.1992) in arguing why joinder is improper."). "Essential to the Ninth Circuit's judgment was its observation that "[f]ailing to heed clear and repeated signals that not all the necessary parties had been named in the complaint does not constitute diligence." *Ivera Medical Corporation v. Excelsior Medical Corporation*, 2013 WL 12170511 at *4, fn 1 (S.D. Cal. 2013). "[T]he party opposing leave to amend 'sent Johnson's counsel a letter which expressly noted the complaint's deficiency … Excelsior's letter at most notes the possibility of a deficiency. Indeed, Excelsior's letter

cannot be interpreted to suggest an actual deficiency or send a "clear" (much less "repeated") signal ... The Court concludes that Johnson is distinguishable on its facts.'" *Id*.

Unlike in *Johnson*, where there were "clear" and "repeated" statements by the defendant, AT&T made a single vague and ambiguous reference -- in a footnote to a brief submitted in support of its motion to dismiss -- that an alleged customer service representative called "Cristelo V" was "affiliated" with a "contractor" called "One Touch Direct." AT&T's buried reference did not explain the nature of the affiliation, provide the legal name of the One Touch Direct entity (there are several), nor explain that One Touch Direct was a third-party call center (*e.g.*, as opposed to an employment loan-out company or other type of contractor). AT&T's vague footnote reference was insufficient information to seek leave to amend to add the specific One Touch Entities as defendants, especially when coupled with AT&T's failure to even mention One Touch Direct at all in the Joint Case Management Statement (Docket 35), and its failure to disclose the legal names of the One Touch Entities in its Rule 26 disclosures (served *after* the Scheduling Order) wherein it refers to them simply as "One Touch Direct."

AT&T's vague reference in a footnote is not the same kind of "clear" and "repeated" message which was set forth in the detailed letter, interrogatory response, and answer which drove the *Johnson* court's decision. At best, AT&T's footnote suggests the mere "possibility" that some unspecified One Touch entity might be a proper defendant. Indeed, AT&T has been far less forthcoming about the role and identity of the One Touch Entities than the defendant was in *Johnson* about the identity of the proposed new party in that case. A defendant which has been coy about identifying other responsible parties cannot claim a lack of diligence. *Thompson v. George DeLallo Co., Inc.*, 2013 WL 211204 at *5 (E.D. Cal. 2013) ("In truth, if there is any fault in plaintiff's counsel's understanding, it lies with defendant, which failed to inform the court that plaintiff may have sued the wrong party."). While AT&T

remains primarily responsible for Plaintiff's losses (and has a non-delegable duty to safeguard his CPNI), the One Touch Entities are also responsible, at least in part.

The present case can also be distinguished from *Johnson* since the Scheduling Order in that case gave the parties a six-month window in which to move to join additional parties, after which a showing of "extraordinary circumstances" would be required. *Johnson v. Mammoth Recreations,* 975 F.2d at 606. The Scheduling Order in this case does not provide a 6-month window to join new parties (if it did, Plaintiff's motion would be timely), and provides that "good cause" rather than the much higher burden of "extraordinary circumstances" is required to join a new party. Here, Plaintiff has a valid explanation for not seeking leave, the amendment is important since it adds additionally responsible parties (which have agreed to participate in the upcoming September 29 mediation), and there is no potential prejudice since AT&T has agreed to the amendment to add the One Touch Entities.

Once the party has demonstrated good cause under Rule 16(b), the court then applies the Rule 15(a) standard. *Johnson*, 975 F.2d at 608. Under Rule 15(a), leave to amend the pleadings before trial should be given "freely ... when justice so requires." Fed. R. Civ. P. 15(a)(2). "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). Justice requires permitting the amendment to add the One Touch Entities since they are responsible, in part, for Plaintiff's damages. There is no potential prejudice to AT&T; indeed, AT&T welcomes the amendment.

## II.  THERE IS GOOD CAUSE TO ADD PUNITIVE DAMAGES ALLEGATIONS AND A CLAIM FOR FRAUDULENT CONCEALMENT

There is good cause to amend the Complaint to add a claim for punitive damages on the negligence theory, and to add a claim for fraudulent concealment. AT&T's arguments that Plaintiff was not diligent, and that the proposed amendments are futile, are both without merit.

### A. Plaintiff Has Acted Diligently

AT&T claims that Plaintiff was not diligent in seeking to amend the complaint at an earlier date. There was an *extensive* undertaking to develop the factual bases for the proposed amendments. Uncovering the new factual bases was not a simple or obvious process, and took considerable time because it involved not just identifying the low-cost and readily available SIM swap solutions set forth in the FAC (which are neither obvious nor readily available from any single source), but also in uncovering that AT&T's business strategy in not implementing these solutions was (and is) motivated by the revenue opportunity in marketing its *post*-SIM swap solution (called ZenKey) to financial institutions. Put another way, Plaintiff discovered that instead of devoting its resources to stopping unauthorized SIM swaps, AT&T made the conscious business decision to profit from them, thereby putting its 150 million mobile customers at even greater risk as illegal SIM swaps have dramatically increased (and continue to increase) in the time since AT&T conceived, built and began marketing ZenKey. The new allegations required discovering, analyzing, understanding and synthesizing substantial amounts of data. To say that Plaintiff should have known everything before filing suit is unsupported argument. To compound matters, Plaintiff lost his life savings due to the unauthorized SIM swap, and cannot snap his fingers and marshal anything close to the same resources that a $100 billion company like AT&T has at its beck and call, in order to understand AT&T's response to the SIM swap problem.

AT&T also argues that the concealment claim is based on "factual allegations that were included in the original complaint, not in the new allegations." (AT&T Response, 4:3-4). This is a disingenuous argument which relies on very broad and generalized allegations in the operative complaint, and conveniently ignores the detailed new allegations which are required to support the fraudulent concealment claim. Plaintiff alleges in great detail in the FAC that AT&T grossly mismanaged its third party call centers by not allocating enough money to them (FAC, ¶ 98), that there were several cost-effective and readily available technology solutions which AT&T

could have implemented but chose not to (FAC, ¶ 99a.-f.), and that AT&T intentionally chose to ignore solving the SIM swap problem and instead focused its efforts on trying to profit from the problem by marketing to financial institutions a post-SIM swap solution to prevent the theft of funds, so far without any success. (FAC, ¶101-103). There is nothing remotely similar to these specific allegations in the current operative complaint. As AT&T is no doubt fully aware, particular allegations are required for fraud claims.

The proposed amendments refer to studies published *after* the filing of the complaint which reveal that the SIM swap problem is getting worse, as described in a the January 2020 study by Princeton University's Center for Information Technology Policy (FAC, ¶ 98), a January 2020 letter from five U.S. Senators and Congressmen to FCC Chairman Ajit Pai calling on him to take action to protect consumers against SIM swap fraud (FAC, ¶ 98), and a November 2019 Wall Street Journal article stating that the number of SIM swap victims had grown to at least 3,000, accounting for at least $70 million in *reported* theft nationwide (FAC, ¶ 99). Plaintiff's further investigation led to the discovery of AT&T's business scheme called ZenKey which seeks to profit from the SIM swap problem rather than fix it. (FAC, ¶ 100).

### B. The Proposed Amendments Should Not Impact The Schedule

"Unlike the cases Defendants cite, permitting the amended complaint will not upset an imminent trial date, require the reopening of discovery, or otherwise disrupt the orderly proceeding of the case." *Earth Island Institute v. Elliott*, 318 F.Supp.3d 1155 (2018). "[D]efendants have not and cannot point to any crucial cutoff-date plaintiff's proposed 90–day extension would meaningfully alter. *Stoddart v. Express Services,* 2017 WL 3333994 (E.D. Cal. 2017).

The proposed amendment to add a punitive damage allegation to the negligence claim, and to add a fraudulent concealment claim, should not impact the current schedule in and of themselves. There are already punitive damages allegations in the current operative pleading, and the addition of new punitive damages allegations on a

different theory of liability, does not change the nature or scope of discovery or the trial date. Indeed, AT&T acknowledges in its papers that there are already similar punitive damages allegations in the Complaint. The same rationale applies to the claim for fraudulent concealment, which should also not impact discovery or the trial date. Tellingly, AT&T does not argue that the proposed amendments will have any impact on discovery or the trial date.

### C. The Proposed Amendments Are Not Futile

AT&T claims that the proposed amendments are futile because there are insufficient allegations of recklessness and fraudulent concealment. These arguments are without merit.

While a negligence claim "ordinarily" does not support a claim for punitive damages, "if the plaintiff can make a showing that defendant's conduct goes beyond gross negligence and demonstrates a knowing and reckless disregard, punitive damages *may* be available." *Simplicity Int'l v. Genlabs Corp.*, No. 09-cv-06146-SVW (RCx), 2010 WL 11515296, at *2 (C.D. Cal. Apr. 21, 2010) (citing *Sturges v. Charles*v *L. Harney, Inc.*, 165 Cal. App 2d 306, 320 (1958)). The plaintiff must show that the defendant (1) had "*actual knowledge* of the risk of harm it is creating" and (2) "in the face of that knowledge, fail[ed] to take steps it [knew would] reduce or eliminate the risk of harm." *Ehrhardt v. Brunswick, Inc.*, 186 Cal. App. 3d 734, 742 (1986) (emphasis in original).

Plaintiff has sufficiently alleged facts that go well *beyond* gross negligence, and which show that AT&T had actual knowledge of the risk of harm and failed to take steps to prevent it. The allegations fully support the claim that AT&T made the conscious decision to try to profit from the SIM swap problem by marketing a post-SIM swap solution instead of implementing measures to stop the problem in the first instance. AT&T has recklessly disregarded the known risks of loss faced by its customers. This type of behavior is far beyond gross negligence, at a minimum is reckless, and crosses over into intentional misconduct territory. If Plaintiff's detailed

allegations are proven at trial, this case will be the poster child for punitive damages based on conscious and reckless disregard.

AT&T's reference to the court's ruling in the *Terpin* case is unpersuasive. *Terpin* did not allege the specific technology solutions which AT&T disregarded, and did not allege AT&T's decision to focus on the ZenKey solution to profit from unauthorized SIM swaps after they occur instead of allocating resources to stopping SIM swaps. AT&T engages in misdirection or straw man arguments by analyzing Terpin's allegations regarding the Consent Decree. Plaintiff's fraudulent concealment case is not based on the Consent Decree. The *Terpin* court's disagreement with this Court's rulings and the *Shapiro* court's rulings, based on the unique facts of the *Terpin* case, are not controlling. Furthermore, Plaintiff has alleged that specific officers endorsed the corporate policy of seeking to profit from illegal SIM swaps instead of trying to fix them. (FAC, ¶¶182, 188). Finally, it bears noting that the *Terpin* court allowed Mr. Terpin to re-visit the issue of punitive damages if "critical facts may arise during discovery that provide Mr. Terpin the ability to adequately plead punitive damages." (*Terpin* Order, 13:19-20). Plaintiff submits that he has alleged more than sufficient "critical facts" which fully support his claim for punitive damages.

AT&T argues that the proposed amendment relating to fraudulent concealment is futile because it owes no disclosure duty to Plaintiff. This contention is contrary to California law. There are "four circumstances in which nondisclosure or concealment may constitute actionable fraud: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts." *LiMandri v. Judkins*, 52 Cal.App.4th 326, 336 (1997).

As the court in *LiMandri* explained further, other than the first instance, in which there must be a fiduciary relationship between the parties, "the other three circumstances in which nondisclosure may be actionable presuppose[ ] the existence of

some other relationship between the plaintiff and defendant in which a duty to disclose can arise.... '[W]here material facts are known to one party and not to the other, failure to disclose them is not actionable fraud unless there is *some relationship* between the parties which gives rise to a duty to disclose such known facts.'" *Id.* at pp. 336-337, original italics, citations omitted, quoting BAJI No. 12.36 (8th ed. 1994).) A relationship between the parties is present if there is "some sort of *transaction* between the parties. Thus, a duty to disclose may arise from the relationship between seller and buyer, employer and prospective employee, doctor and patient, or parties entering into any kind of contractual agreement." *LiMandri,* at p. 337, original italics, citations omitted, citing *Warner Constr. Corp. v. City of Los Angeles* (1970) 2 Cal.3d 285, 294; see Use Note to CACI No. 1901 indicating that for concealment claim not based upon fiduciary relationship, "if the defendant asserts that there was no relationship based on a transaction giving rise to a duty to disclose, then the jury should also be instructed to determine whether the requisite relationship existed."

      The mobile phone carrier-customer relationship is the type of relationship which gives rise to the duty to disclose.  See *Lovejoy v. AT&T Corp.*, 92 Cal.App.4th 85 (2001) (AT&T had duty to disclose material facts to long distance customer and could be found liable for active concealment).  Here, AT&T concealed from Plaintiff that he was at risk for SIM swaps and resulting financial losses, that there were available solutions that AT&T could have implemented but elected not to, and that AT&T was recklessly focused on trying to bring to market a post-SIM swap solution instead of implementing solutions to stop SIM swaps in the first instance.  As Plaintiff alleges in the proposed FAC, had he known these facts he would have taken further measure to protect himself and would not have remained as a customer of AT&T. (FAC, ¶ 184).  This is sufficient to plead fraudulent concealment. In addition, and as presented in the moving papers, a fraudulent concealment claim may be found where there is a "special relationship," as the Court has already found in this case.  The fraudulent concealment claim is well-pled and far from "futile."

9
PLAINTIFF'S REPLY TO AT&T'S RESPONSE TO MOTION TO FILE FIRST AMENDED COMPLAINT

## IV. CONCLUSION

For all the foregoing reasons, Plaintiff requests that the Court grant his motion.

DATED: September 21, 2020

CHRISTOPHER GRIVAKES
AFFELD GRIVAKES LLP


By: /s/ *Christopher Grivakes*
　　　　Christopher Grivakes

Attorneys for Plaintiff ROBERT ROSS

**PROOF OF SERVICE**

  I hereby certify that on September 21, 2020, I electronically filed the foregoing document using the Court's CM/ECF system. I am informed and believe that the CM/ECF system will send a notice of electronic filing to the interested parties.

                 s/ Christopher Grivakes
                 Christopher Grivakes