UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT ROSS, | Case No. 19-cv-06669-JST |
|         Plaintiff, | |
|     v. | **ORDER GRANTING MOTION TO FILE FIRST AMENDED COMPLAINT** |
| AT&T MOBILITY, LLC, | Re: ECF No. 58 |
|         Defendant. | |

Before the Court is Plaintiff Robert Ross's motion to file his first amended complaint. ECF No. 58.  The Court will grant the motion.

## I.      BACKGROUND

The factual background of this case is described more fully in the Court's order granting in part and denying in part Defendant AT&T Mobility, LLC's motion to dismiss.  *See* ECF No. 36. In short, this action arises out of AT&T's alleged failure to protect the sensitive and confidential account information of Ross, who is a mobile services subscriber of AT&T and a resident of San Francisco, California.  ECF No. 1 ¶¶ 1, 9.  Ross contends that AT&T, a mobile services provider incorporated in Delaware, promises its customers that it will protect their privacy and will keep their personal information "safe."  *Id.* ¶¶ 4, 10-11, 103.  AT&T allegedly broke its promises regarding privacy and security by failing to implement sufficient data security systems and procedures, and by failing to adequately supervise its employees.  *Id.* ¶¶ 4-5, 18.  This failure resulted in an AT&T employee effectuating an unauthorized "SIM swap" on Ross' mobile phone, which allowed a hacker to gain unauthorized access to his financial and other accounts and steal more than $1 million of his funds.  *Id.* ¶¶ 1, 5, 44.

On October 17, 2019, Ross filed a complaint asserting seven claims against AT&T: (1) a

claim for violations of the Federal Communications Act, 47 U.S.C. § 201, *et seq.*; (2) a claim for violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*; (3) a claim for violations of the "California Constitutional Right to Privacy"; (4) a claim for negligence; (5) a claim for negligent supervision; (6) a claim for violations of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*; and (7) a claim for violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. *Id.* ¶¶ 124-202.

On December 6, 2019, AT&T filed a motion to dismiss all claims. ECF No. 16. The Court dismissed Ross's CLRA claim but otherwise denied AT&T's motion. ECF No. 36. On May 19, 2020, the Court issued a scheduling order which set June 4, 2020 as the deadline to add parties or amend the pleadings. ECF No. 42. The Court noted that, "[a]fter this deadline, a party may still seek amendment, but must demonstrate good cause." *Id.* at 1 n.1 (citing Fed. R. Civ. P. 16(b)(4)).

On August 25, 2020, Ross filed the instant motion for leave to file a first amended complaint. ECF No. 58. AT&T opposes Ross's motion to the extent it seeks to add (1) a claim of fraudulent concealment and (2) a claim for punitive damages in the existing negligence count. ECF No. 63 at 4. AT&T "does not oppose [Ross's] request to add [the] One Touch" defendants. *Id.* Ross has filed a reply. ECF No. 64.

## II.      JURISDICTION

The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1332.

## III.     LEGAL STANDARD

### A.      Federal Rule of Civil Procedure 16

Requests to modify a scheduling order made after the Court has set a deadline for amending the pleadings are governed by Federal Rule of Civil Procedure 16. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000). Rule 16 requires "good cause" and the consent of the Court to amend a scheduling order. Fed. R. Civ. P. 16(b)(4). "Unlike Rule 15(a)'s liberal amendment policy," the good cause standard "primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). "Although the existence or degree of prejudice to the party opposing the modification

United States District Court
Northern District of California

2

1    might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving

2    party's reasons for seeking modification." *Id.* "If the party seeking the modification 'was not

3    diligent, the inquiry should end' and the motion to modify should not be granted." *Zivkovic v. S.*

4    *California Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002) (quoting *Johnson*, 975 F.2d at 609).

5         Because diligence is the touchstone of the inquiry, "[t]he good cause standard typically

6    will not be met where the party seeking to modify the scheduling order has been aware of the facts

7    and theories supporting the amendment since the inception of the action." *Jacobson v. Persolve,*

8    *LLC*, No. 14-cv-00735-LHK, 2015 WL 2061712, at *4 (N.D. Cal. May 1, 2015) (quoting *In re W.*

9    *States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013)).

10        **B.     Federal Rule of Civil Procedure 15**

11        If the moving party demonstrates good cause to modify the scheduling order, the Court

12   must then determine whether to grant leave to amend the complaint under Federal Rule of Civil

13   Procedure 15(a)(2).  *See Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, No. 16-cv-01393-JST,

14   2017 WL 3149297, at *3 (N.D. Cal. July 25, 2017).  Under Federal Rule of Civil Procedure

15   15(a)(2), a "court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P.

16   15(a)(2).  The Court considers five factors in deciding a motion for leave to amend: bad faith,

17   undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has

18   previously amended his complaint.  *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d

19   at 738.  *See also Foman v. Davis*, 371 U.S. 178, 182 (1962).  The rule is "to be applied with

20   extreme liberality."  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir.

21   2003) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)).

22   Generally, a court should determine whether to grant leave "with all inferences in favor of

23   granting the motion."  *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999).

24   **IV.    DISCUSSION**

25        Ross seeks to file an amended complaint to add two new defendants as well as an

26   additional cause of action and an additional claim for punitive damages.  ECF No. 58 at 6.  The

27   Court will grant the motion.

28        As an initial matter, the Court notes that the motion is controlled by Federal Rule of Civil

United States District Court
Northern District of California

Procedure 16.  The Court previously set June 4, 2020 as the deadline to amend the pleadings, and the present motion was filed on August 25, 2020.  ECF No. 42 at 1; ECF No. 58.  Thus, Ross must demonstrate good cause before the Court will allow amendment.  Fed. R. Civ. P. 16(b)(4); *see Ctr. for Biological Diversity v. McCarthy*, No. C 13-5142 SBA, 2014 WL 3058321, at *2 (N.D. Cal. July 3, 2014) ("Because Plaintiff filed the instant motion for leave to amend after [the deadline to amend the complaint or join parties], it must first demonstrate good cause under Rule 16 for its belated motion.") (citing *Johnson*, 975 F.2d at 608); *Lil' Man in the Boat, Inc. v. City and County of San Francisco*, No. 17-cv-00904-JST, 2019 WL 1756347, at *2 (N.D. Cal. Apr. 19, 2019) (finding that plaintiff's motion was controlled by Rule 16 where the "Court previously set . . . the deadline to amend the pleadings . . . and the present motion [for leave to amend] was filed . . . after that date") (citation omitted).

### A.    Opposed Amendments

AT&T objects to Ross adding substantive allegations against AT&T in his amended complaint.

#### 1.    Rule 16

Courts give leave to amend pleadings after a scheduling deadline has passed only on a showing of good cause.  Fed. R. Civ. P. 16(b)(4).  AT&T argues that Ross fails to demonstrate good cause "for failing to raise [his concealment] claim by the deadline" because the material facts underlying this claim were alleged in the original complaint and "the new fact in the proposed amended complaint are not significant to the concealment claim."  ECF No. 63 at 8.  AT&T asserts that Ross has not demonstrated good cause "as to the punitive damages request" because Ross "has not been diligent when he failed to perform necessary investigation until after the deadline for amending the pleadings is past," and Ross "does not have good cause for discovering a new *legal theory* . . . that he could have raised originally."  *Id.* at 8-9.  Ross contends that good cause exists because he acted diligently after uncovering the new allegations which "required discovering, analyzing, understanding and synthesizing substantial amounts of data."  ECF No. 64 at 5.  In response to AT&T's argument that Ross bases his new claims on factual allegations that were included in the original complaint, Ross asserts that the allegations in his original complaint

4

1    are not "remotely similar to [the] specific allegations" he proposes to add through amendment.  *Id.*

2         Ross asserts that he was diligent in seeking amendment.  Ross's counsel explains that

3    AT&T's reference to "One Touch Direct" in its initial disclosures – which were served on June 5,

4    2020, a day after the deadline to amend the pleadings – was the first time he "learned that AT&T

5    had contracted with a  third-party call center that effected the SIM swap on Ross' phone."  ECF

6    No. 60 ¶¶ 3-4.[1]  Ross's counsel conducted research into "One Touch Direct," and proposed filing a

7    FAC that added the "One Touch Entities" on July 29, 2020.  *Id.* ¶ 6.  AT&T agreed to stipulate to

8    the FAC but reserved the right to challenge the proposed pleading.  *Id.* ¶ 7.  Ross's counsel

9    explains that "AT&T's intention to challenge the pleadings caused [him] to conduct further

10   research and investigation into the possible grounds for AT&T's intended pleading challenges."

11   *Id.* ¶ 8.  Counsel explains that it was during this investigation that he "learned . . . for the first

12   time" about the facts underlying the new claims in the FAC, including that "(i) AT&T has been

13   accused of mismanaging its call centers; (ii) there are readily available technology solutions that

14   AT&T could have implemented to prevent Ross's unauthorized SIM swap; and (iii) since before

15   Ross's SIM swap, AT&T was developing a technology solution to financial institutions to prevent

16   theft *after* unauthorized SIM swap has occurred."  *Id.* ¶ 9.

17        First, the Court rejects AT&T's argument that the material facts underlying Ross's new

18   claims were alleged in his original complaint.  Ross seeks to add a claim of fraudulent

19   concealment and a claim for punitive damages in the existing negligence count.  ECF No. 58 at 6;

20   ECF No. 60-3 ¶¶ 178-88.  Contrary to AT&T's assertion that Ross's "original complaint pled *the*

21   *exact facts* that Plaintiff now alleges were not disclosed," ECF No. 63 at 7, the FAC includes new

22   allegations regarding (1) AT&T's management of its third- party call centers, (2) technology,

23   available and known to AT&T, that could have protected Ross's security and privacy, and

24

25   ―――――――――――――

26   [1] AT&T argues that Ross was on notice that it had contracted with One Touch Direct because it
     stated as much in a footnote of its motion to dismiss.  *See* ECF No. 16 at 12 n.2 ("'Cristelo V.,'
27   whom Mr. Ross alleges performed the alleged SIM swap, was not an employee of AT&T but was
     affiliated with an AT&T contractor, One Touch Direct, that provides AT&T services.").  Ross
28   characterizes this reference to One Touch Direct as "vague," and notes that AT&T did not mention
     One Touch Direct in the Joint Case Management Statement or "disclose the legal names of the
     One Touch Entities" in its Rule 26 disclosures.  ECF No. 64 at 3.

United States District Court
Northern District of California

(3) AT&T's efforts to profit from SIM swaps through its ZenKey business, ECF No. 60-3 ¶¶ 98-105.  These allegations were not included in Ross's original complaint and provide the basis for his new claims.

Second, the Court holds that Ross has been diligent in seeking to amend his complaint.

Ross's explanation for seeking to amend the complaint after the Court's deadline – that AT&T's initial disclosures and subsequent response to his proposed FAC prompted him to investigate AT&T's relationship with third-party call centers – and Ross's allegation that he did not know or have reason to know the factual basis of his new claims before this investigation distinguishes this case from *Johnson v. Mammoth Recreations, Inc.*  AT&T relies on *Johnson* to argue that Ross "has not been diligent when he has failed to perform necessary investigation until after the deadline for amending the pleadings is past."  ECF No. 63 at 9.  However, the plaintiff in *Johnson* failed "to heed clear and repeated signals that not all the necessary parties had been named in the complaint."  975 F.2d at 609.  AT&T does not point to any evidence or "signals" that should have put Ross on notice of the claims he now raises, other than a vague reference to One Touch Direct in its motion to dismiss.  Ross explains that it was only AT&T's insistence that it reserve its right to challenge an amended complaint naming the One Touch Direct entities that caused Ross to investigate AT&T's relationship with third-party call centers further, which led to his discovery of the facts underlying his new claims.  ECF No. 60 ¶ 8.  This sequence of events distinguishes this case from those in which plaintiffs were or should have been aware of potential theories or defendants before the deadline to amend pleadings had passed.  *See, e.g.*, *City of Lincoln v. United States*, No. 2:16-cv-01164-KJM-AC, 2018 WL 3917711, at *6 (E.D. Cal. Aug. 16, 2018) ("Courts have found parties not diligent when those parties possessed the documents containing the relevant information."); *Eaton v. Siemens*, No. 07-cv-315-FCD (KJM), 2008 WL 2413156, at *2 (E.D. Cal. June 12, 2008) (finding no good cause for "amendments pertain[ing] to facts that [plaintiff] was well-aware of at the time of the filing of the original complaint").

The Court also finds that Ross was diligent in filing his motion to amend after he learned the information underlying his new claims.  Ross's counsel explains that AT&T's counsel's indication on August 5, 2020 that AT&T would reserve the right to challenge the FAC prompted

his investigation into AT&T's relationship with third-party call centers.  ECF No. 60 ¶¶ 7-8.  Once Ross discovered information supporting additional claims, he acted diligently in seeking stipulation from AT&T on August 17, 2020 and filing his motion to amend on August 25, 2020, the day AT&T stated that it would not enter into a stipulation.  *Id.* ¶¶ 10-11; ECF No. 58.  Ross's discovery of new facts after the deadline to amend pleadings had passed, and his diligent filing of his motion to amend thereafter, supports granting him leave to amend.  *See MagTarget LLC v. Saldana*, No. 18-cv-03527-JST, 2019 WL 1904205, at *2 (N.D. Cal. Apr. 29, 2019) (finding good cause to modify the scheduling order and grant leave to amend where facts supporting new claims emerged in discovery); *Melingonis v. Rapid Capital Funding, L.L.C.*, No. 16cv490-WQH-KSC, 2017 WL 1550045, at *3 (S.D. Cal. May 1, 2017) (finding diligence where plaintiff could practicably amend complaint only after receiving defendants' written discovery responses).  *See also Eastwood ex rel. M.E. v. Yamhill County*, No. 18-cv-00293-YY, 2019 WL 1246244, at *3 (D. Or. Feb. 12, 2019), *report and recommendation adopted*, 2019 WL 1246192 (D. Or. Mar. 18, 2019) (noting that "good cause may exist where recently discovered facts would support a party's new allegations," but finding insufficient a "declaration [that] does not allege that any of the new information was discovered after . . . the deadline to amend the pleadings").

Finally, while the focus of the good cause inquiry rests on the moving party's diligence, the Court also considers the possibility of prejudice to the nonmoving party.  *Johnson*, 975 F.2d at 609.  AT&T objects to Ross adding substantive claims to his complaint, but makes no argument that it will be prejudiced.  *See* ECF No. 63.  While caselaw supports that "the time and expense of continued litigation on a new theory, with the possibility of additional discovery" causes undue prejudice, *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1161 (9th Cir. 1989) (quotation marks and citation omitted), the bulk of these cases involve plaintiffs who raise new theories on facts they were already aware of.  *See, e.g.*, *id.*; *Georgiou Studio, Inc. v. Boulevard Invest, LLC*, 663 F. Supp. 2d 973, 978 (D. Nev. 2009) ("Where a party is relitigating issues previously decided on a new theory undue prejudice likely exists.").  As described above, Ross was not aware of the factual allegations underlying his new claims until after the deadline to amend pleadings had passed.  The Court concludes that Ross's diligence in seeking amendment outweighs any

1    prejudice to AT&T and Rule 16 is thus satisfied.

2              **2.     Rule 15**

3         AT&T further argues that the Court should deny amendment pursuant to Rule 15 because

4    amendment would be futile.  ECF No. 63 at 9-10.

5         A proposed amendment to a pleading is "futile," and properly denied, "only if no set of

6    facts can be proved under the amendment to the pleadings that would constitute a valid and

7    sufficient claim or defense."  *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988),

8    *implied overruling on other grounds recognized by Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

9    (citation omitted).   "[The] proper test to be applied when determining the legal sufficiency of a

10   proposed amendment is identical to the one used when considering the sufficiency of a pleading

11   challenged under Rule 12(b)6)."  *Id.*  To survive a motion to dismiss, "a judge must accept as true

12   all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94

13   (2007) (per curiam) (citation omitted), and may dismiss a claim "only where there is no cognizable

14   legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim

15   to relief," *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010)

16   (citations omitted).  Denial of leave to amend for futility is "rare."  *Netbula, LLC v. Distinct Corp.*,

17   212 F.R.D. 534, 538-39 (N.D. Cal. 2003).  Moreover, if it is "not clear beyond doubt that

18   amendment of [a] complaint would be futile," a court should permit a party to amend its

19   complaint.  *See Ctr. for Biological Diversity v. Veneman*, 394 F.3d 1108, 1114 (9th Cir. 2005).

20        As the Court has previously noted, "denial of a motion for leave to amend on the ground of

21   futility 'is rare and courts generally defer consideration of challenges to the merits of a proposed

22   amended pleading until after leave to amend is granted and the amended pleading is filed.'"

23   *Henderson v. Muniz*, No. 14-cv-01857-JST, 2018 WL 6331008, at *3 (N.D. Cal. Dec. 4, 2018)

24   (quoting *Clarke v. Upton*, 703 F. Supp. 2d 1037, 1043 (E.D. Cal. 2010)).  "[W]ithout formal

25   briefing on the adequacy of [the] new claims, the Court is not in a position to determine that they

26   fail as a matter of law.  The Court therefore declines to deny leave to amend on that basis."

27   *MagTarget*, 2019 WL 1904205, at *3.

28        The remaining *Foman* factors further support Ross's motion to amend.  AT&T does not

United States District Court
Northern District of California

8

1  allege bad faith, and Ross has not previously amended his complaint.  Finally, as explained above,

2  the Court concludes that Ross did not unduly delay seeking leave to amend and that any prejudice

3  to AT&T is outweighed by Ross's diligence.  Ross thus meets the Rule 15's liberal standard for

4  amendment.

5  **B.      Unopposed Amendments**

6  AT&T does not oppose Ross's motion to amend to the extent it seeks to add two additional

7  defendants: (1) One Touch Direct, LLC, and (2) One Touch Direct – San Antonio, LLC.  ECF No.

8  58 at 6; ECF No. 63 at 4-5.  As explained above, the Court finds that Ross has been diligent since

9  AT&T referenced "One Touch Direct" in its initial disclosures and has good cause for seeking to

10  amend his complaint.[2]  The Court exercises its discretion to allow amendment with respect to

11  adding these defendants.

12  **CONCLUSION**

13  For the foregoing reasons, the Court GRANTS leave to file a first amended complaint.

14  Ross shall file his proposed amended complaint, which is attached as Exhibit 3 to ECF No. 60,

15  within seven days of the date of this order.

16  **IT IS SO ORDERED.**

17  Dated:  December 18, 2020



JON S. TIGAR
United States District Judge

---

[2] The Court agrees with Ross that AT&T's vague reference to "One Touch Direct" is far from the
"clear and repeated signals that not all the necessary parties had been named in the complaint" at
issue in *Johnson*.  975 F.2d at 609.

9

United States District Court
Northern District of California