# <u>INTERROGATORIES</u>

**1.     For each year from 2013 to the present, state the number of unauthorized SIM swaps reported to AT&T by its customers.**

<u>**RESPONSE**</u>**:** AT&T objects to this Interrogatory as overly broad as to time period. AT&T's response will be limited to information from the time period of January 1, 2018, to the present. AT&T further objects that the phrase "unauthorized SIM swaps" is vague and ambiguous as to whose authorization is at issue or what constitutes authorization. AT&T will construe this phrase to mean SIM swaps that were performed in connection with the telephone numbers of AT&T customers without being authorized by those customers. AT&T objects to this Interrogatory to the extent  it seeks information not within AT&T's possession, custody, or control or not ascertainable by any reasonable method, including which SIM swaps were authorized by an AT&T customer. AT&T objects to this Interrogatory to the extent it seeks information regarding the claims and activities of other AT&T customers, containing the protected CPNI of other AT&T customers, and/or concerning incidents or occurrences that have no relevance to or bearing upon the claims or defenses in this case. Because Ross has alleged that AT&T violated its duties to him and his claims will rise or fall based on the  evidence concerning his own interactions with AT&T, information regarding SIM swaps experienced by other customers is not relevant to any issue in this case, is not proportional to the needs of the case, and  the burden of identifying, collecting, and producing such information would far outweigh any likely benefit of the  disclosure  of  such information in this matter. AT&T further objects to the extent that the requested information is protected against disclosure by applicable federal and state law and authorities, including  by  not limited to the Federal Communications Act, 47 U.S.C. § 222, the Stored Communications Act, 18 U.S.C. § 2707, and the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510 *et seq*. AT&T further objects that the Interrogatory seeks materials protected by the privacy right of third party customers. AT&T further objects that the Interrogatory seeks materials protected by attorney-client and/or attorney work product privileges. AT&T's investigation into the matters at issue in this case and this Interrogatory is continuing. AT&T reserves the right to supplement, correct, or update this or any response at a later date. Based on the foregoing General and Specific

Objections, AT&T will meet and confer over whether there is an acceptable scope to this Interrogatory.

**6.      State the total dollar amount paid by AT&T to resolve claims arising out of unauthorized SIM swaps**

**RESPONSE:** AT&T objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of this case because it is unlimited as to time. AT&T's response will therefore be limited to information from the time period of January 1, 2018 to the present. AT&T also objects that the Interrogatory is overly broad, unduly burdensome, and not proportional to the needs of this case to the extent it seeks information not relevant to the incidents at issue. For example, this Interrogatory calls for information regarding any payments made by AT&T to other AT&T subscribers based on incidents or occurrences that involve entirely different facts and circumstances than any SIM swap at issue in this case. Such information has no relevance to or bearing upon the claims or defenses in this case. Because Ross has alleged that AT&T violated its duties to him and his claims will rise or fall based on the evidence concerning his own interactions with AT&T, information regarding SIM swaps experienced by other customers is not relevant to any issue in this case, is not proportional to the needs of the case, and the burden of identifying, collecting, and producing such information would far outweigh any likely benefit of the disclosure of such information in this matter. Moreover, information pertaining to other subscribers may contain information that is protected against disclosure by applicable federal and state law and authorities, including by not limited to the Federal Communications Act, 47 U.S.C. § 222, the Stored Communications Act, 18 U.S.C. § 2707, and the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510 *et seq*. AT&T further objects that any settlements entered by AT&T, to the extent they exist, may include confidentiality provisions that preclude disclosure of any information regarding the settlement, including its amount. AT&T further objects that the Interrogatory seeks materials protected by the privacy rights of third party subscribers. AT&T further objects that the phrase "unauthorized SIM swaps" is vague and ambiguous as to whose authorization is at issue or what constitutes authorization. AT&T will construe this phrase to mean SIM swaps that were performed in connection with the telephone numbers of AT&T customers without being authorized

by those customers. AT&T's investigation into the matters at issue in this case and this Interrogatory is continuing. AT&T reserves the right to supplement, correct, or update this or any response at a later date.

For the reasons set forth in the foregoing General and Specific Objections, AT&T will not provide a further response to this Interrogatory.

**9.** **For each year from 2013 to the present, describe in detail each measure AT&T implemented to combat unauthorized SIM swaps**

**RESPONSE:** AT&T objects to this Interrogatory as lacking a reasonable temporal limitation. AT&T's response will therefore be limited to information from the time period of January 1, 2018 to the present. AT&T further objects that the interrogatory is overly broad, vague, and ambiguous with respect to the term "each measure AT&T implemented to combat unauthorized SIM swaps." AT&T further objects that the phrase "unauthorized SIM swaps" is vague and ambiguous as to whose authorization is at issue or what constitutes authorization. AT&T will construe this phrase to mean SIM swaps that were performed in connection with the telephone numbers of AT&T customers without being authorized by those customers. AT&T further objects to this Interrogatory on the basis that it seeks information protected by the attorney client and/or attorney work product privileges. AT&T further objects to this Interrogatory on the basis that it seeks proprietary, confidential and/or trade secret information. AT&T objects to the term "measure" as vague and ambiguous. AT&T objects to this Interrogatory to the extent it seeks information regarding policies that were not in place when Ross alleges he experienced a SIM swap because such policies are not relevant to this litigation and are not admissible under the Federal Rules of Evidence. AT&T further objects to this Interrogatory to the extent it asks for measures to be identified or segregated by year. AT&T further objects to this Interrogatory to the extent it suggests that AT&T has final authority to implement any measure or policy at vendor call centers.

Subject to and without waiving its General and Specific Objections, AT&T responds as follows: AT&T's investigation into the matters at issue in this case and this Interrogatory is continuing. AT&T reserves the right to supplement, correct, or update this or any response at a later date.









AT&T further states that AT&T states that information regarding AT&T's policies concerning SIM changes, customer verification and account change procedures is located in AT&T's policy documents on these topics, which AT&T will be producing in response to Mr. Ross's First Requests for Production, and that the burden of identifying the responsive information in those materials will be substantially the same for Mr. Ross as for AT&T. In addition, AT&T will produce a copy of its privacy policy(ies) and policies designed to protect subscriber confidential information and CPNI in effect during the period of unauthorized SIM changes Mr. Ross alleges in the complaint.

21.  **State each date that the phone(s) bearing IMEI numbers 359239069326461, 354851092905311 and 359407081422499 (which are referenced in the REACT Investigation Report involving the SIM SWAP) were involved in an unauthorized SIM swap.**

**RESPONSE:** AT&T objects to this Interrogatory as lacking a reasonable temporal limitation. AT&T's response will therefore be limited to information from the time period of

January 1, 2018 to the present. AT&T objects to this Interrogatory to the extent it relies on assumptions unsupported by any evidence. AT&T further objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of this case to the extent it seeks information not relevant to the incidents at issue, including unrelated data about a phone that does not belong to Ross. This Interrogatory would require AT&T to provide information on SIM swaps of other customers, which concern incidents or occurrences that involve entirely different facts and circumstances than any SIM swap at issue in this case. Such information about different customers, incidents, and facts and circumstances has no relevance to or bearing upon the claims or defenses in this case. Because Ross has alleged that AT&T violated its duties to him and his claims will rise or fall based on the evidence concerning his own interactions with AT&T, the burden of identifying, collecting, and reproducing information about IMEIs, if any, that were connected only to other customers' experiences is not proportional to the needs of the case and would far outweigh any likely benefit of the disclosure of such information in this matter. Moreover, information pertaining to other subscribers may contain information that is protected against disclosure by applicable federal and state law and authorities, including by not limited to the Federal Communications Act, 47 U.S.C. § 222, the Stored Communications Act, 18 U.S.C. § 2707, and the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510 *et seq*. Accordingly, AT&T will limit its response to SIM swaps involving Ross. AT&T objects to this Interrogatory to the extent it seeks information provided by AT&T to any government or law enforcement entity to the extent such Interrogatory is contrary to, or not allowed by, any law or policy. AT&T further objects that the phrase "unauthorized SIM swap" is vague and ambiguous as to whose authorization is at issue or what constitutes authorization. AT&T will construe this phrase to mean SIM swaps that were performed in connection with the telephone numbers of AT&T customers without being authorized by those customers. AT&T's investigation into the matters at issue in this case and this Interrogatory is continuing. AT&T reserves the right to supplement, correct, or update this or any response at a later date.

Subject to and without waiving its General and Specific Objections, AT&T states as follows:

Based on its investigation, the phone bearing IMEI number 359239069326461 was involved in an alleged SIM swap of Ross's phone on October 26, 2018.

> **25.   IDENTIFY each of AT&T's past and present officers, managers and directors who have held positions with ZENKEY**

**RESPONSE:** AT&T objects to this Interrogatory as overly broad as to time period. AT&T's response and production of documents will be limited to information from the time period of January 1, 2018 to the present. AT&T objects that information regarding ZenKey is not relevant to this litigation because ZenKey was not used by or available to Ross or any customer at the time of the alleged SIM swap. AT&T further objects that ZenKey is addressed only in the proposed amended complaint, which the Court has not granted Ross leave to file. AT&T further objects that the Interrogatory is unduly burdensome and invasive of confidential, proprietary, trade secret, and/or sensitive financial information of third parties that AT&T is prohibited from disclosing and that has no bearing on this litigation. AT&T further objects that this Interrogatory is not proportionate to the needs of this case because any tangential relevance Ross could theorize for ZenKey is outweighed by the burden of navigating these complex confidentiality issues. AT&T further objects that Ross can obtain any relevant information regarding ZenKey via public information easily accessible to Ross, including from AT&T's website. AT&T further objects that AT&T's intentions regarding the ZenKey App have no relevance to Ross's claim that his own SIM swap should have or could have been prevented. AT&T's investigation into the matters at issue in this case and this Interrogatory is continuing. AT&T reserves the right to supplement, correct, or update this or any response at a later date.

Based on its General and Specific Objections, AT&T will not further respond to this Interrogatory.

## **REQUESTS FOR PRODUCTION**

> **13.   DOCUMENTS sufficient to show the measures AT&T implemented prior to October 26, 2018 to combat unauthorized SIM swaps.**

**RESPONSE:** AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it is unlimited as to time. AT&T's response and

production of documents will therefore be limited to information from the time period of January 1, 2018 to October 26, 2018. AT&T objects that this Request is not proportionate to the needs of this case because it seeks documents pertaining to AT&T's measures, even though the SIM swap that Mr. Ross alleges involves activities by One Touch Direct employees or representatives, not AT&T employees or representatives. AT&T further objects that the phrase "unauthorized SIM swaps" is vague and ambiguous as to whose authorization is at issue or what constitutes authorization. AT&T will construe this phrase to mean SIM swaps that were performed in connection with the telephone numbers of AT&T customers without being authorized by those customers.

Subject to and without waiving the foregoing General and Specific Objections, AT&T will produce AT&T policies referencing SIM changes and the prevention of unauthorized access to customer accounts from January 1, 2018 to October 26, 2018, to the extent such documents exist in AT&T's possession and can be located pursuant to a reasonable search.

**22.** **DOCUMENTS sufficient to show the measures AT&T has implemented since October 26, 2018 to combat unauthorized SIM swaps.**

**RESPONSE:** AT&T objects that this Request seeks information that is not relevant and not proportionate to the needs of this case because changes to AT&T's policies after the alleged SIM swap do not bear on any issue in this case and would be inadmissible under the Federal Rules of Evidence. AT&T further objects that the phrase "unauthorized SIM swaps" is vague and ambiguous as to whose authorization is at issue or what constitutes authorization. AT&T will construe this phrase to mean SIM swaps that were performed in connection with the telephone numbers of AT&T customers without being authorized by those customers.

Subject to and without waiving the foregoing General and Specific Objections, AT&T will produce responsive, non-privileged documents, to the extent such documents exist in AT&T's possession and can be located pursuant to a reasonable search.

**35.** **All DOCUMENTS RELATING TO features of the ZenKey App which are intended to combat fraud or theft due to unauthorized SIM swaps.**

**RESPONSE:** AT&T objects to this Request as overly broad as to time period. AT&T's response and production of documents will be limited to information from the time period of January

1, 2018 to the present. AT&T further objects that the phrase "unauthorized SIM swaps" is vague and ambiguous as to whose authorization is at issue or what constitutes authorization. AT&T will construe this phrase to mean SIM swaps that were performed in connection with the telephone numbers of AT&T customers without being authorized by those customers. AT&T objects to the phrase "which are intended to" as vague and ambiguous with respect to whose intentions are referenced. AT&T objects that documents regarding ZenKey are not relevant to this litigation because ZenKey was not used by or available to Ross or any customer at the time of the alleged SIM swap. AT&T further objects that ZenKey is addressed only in the proposed amended complaint, which the Court has not granted Ross leave to file. AT&T further objects that the Request is unduly burdensome and invasive of confidential, proprietary, trade secret, and/or sensitive financial information of third parties that AT&T is prohibited from disclosing and that has no bearing on this litigation. AT&T further objects that this Request is not proportionate to the needs of this case because any tangential relevance Ross could theorize for ZenKey is outweighed by the burden of navigating these complex confidentiality issues. AT&T further objects that Ross can obtain any relevant information regarding ZenKey via public information easily accessible to Ross, including from AT&T's website. AT&T further objects that AT&T's intentions regarding the ZenKey App have no relevance to Ross's claim that his own SIM swap should have or could have been prevented.

AT&T will not produce documents responsive to this Request.

**36.     DOCUMENTS sufficient to show (i) the investment in ZENKEY by AT&T (or any parent, subsidiary or affiliate), (ii) the IDENTITY of officers, managers, directors or employees of AT&T (and its parent, subsidiary and sibling entities) who have any management role or board seat in ZENKEY, (iii) ZENKEY sales and marketing presentations to financial institutions, and (iv) the detailed financial projections (including pricing, revenue, and profit) for ZENKEY.**

**RESPONSE**:  AT&T objects to this Request as overly broad as to time period. AT&T's response and production of documents will be limited to information from the time period of January 1, 2018 to the present. AT&T objects that documents regarding ZenKey are not relevant to this litigation because ZenKey was not used by or available to Ross or any customer at the time of the alleged SIM swap. AT&T further objects that ZenKey is addressed only in the proposed amended complaint, which the Court has not granted Ross leave to file. AT&T further objects that the Request

is unduly burdensome and invasive of confidential, proprietary, trade secret, and/or sensitive financial information of third parties that AT&T is prohibited from disclosing and that has no bearing on this litigation. AT&T further objects that this Request is not proportionate to the needs of this case because any tangential relevance Ross could theorize for ZenKey is outweighed by the burden of navigating these complex confidentiality issues. AT&T further objects that Ross can obtain any relevant information regarding ZenKey via public information easily accessible to Ross, including from AT&T's website. AT&T further objects that the requested financial information regarding ZenKey has no relevance to Ross's claim that his own SIM swap should have or could have been prevented.

AT&T will not produce documents responsive to this Request.

**37.    All organization charts detailing the executive management and board of managers (or directors) of ZENKEY.**

**RESPONSE**: AT&T objects to this Request as overly broad as to time period. AT&T's response and production of documents will be limited to information from the time period of January 1, 2018 to the present. AT&T objects to this request for documents concerning the organization of an unaffiliated third party as overly broad because it seeks irrelevant materials having no bearing on the claims or defenses in this matter, and the burden of identifying such materials is not proportional to the needs of this case. AT&T further objects to this request as vague and ambiguous with regard to the term "executive management." AT&T objects that documents regarding ZenKey are not relevant to this litigation because ZenKey was not used by or available to Ross or any customer at the time of the alleged SIM swap. AT&T further objects that ZenKey is addressed only in the proposed amended complaint, which the Court has not granted Ross leave to file. AT&T further objects that the Request is unduly burdensome and invasive of confidential, proprietary, trade secret, and/or sensitive financial information of third parties that AT&T is prohibited from disclosing and that has no bearing on this litigation. AT&T further objects that this Request is not proportionate to the needs of this case because any tangential relevance Ross could theorize for ZenKey is outweighed by the burden of navigating these complex confidentiality issues. AT&T further objects that Ross can obtain any relevant information regarding ZenKey via public information easily accessible to

Ross, including from AT&T's website. AT&T further objects that the requested information regarding ZenKey has no relevance to Ross's claim that his own SIM swap should have or could have been prevented.

AT&T will not produce documents responsive to this Request.

**39.    DOCUMENTS sufficient to show the reporting relationship between Johannes Jaskolski & Bill O'Hern from October 2017 to the present.**

**<u>RESPONSE</u>:** AT&T objects to this Request as overly broad as to time period. AT&T's response and production of documents will be limited to information from the time period of January 1, 2018 to the present.

Subject to and without waiving the foregoing General and Specific Objections, AT&T will produce documents sufficient to show the current reporting relationship between Johannes Jaskolski and Bill O'Hern.

**40.    Presentations made by Johannes Jaskolski RELATING TO unauthorized SIM swaps.**

**<u>RESPONSE</u>:** AT&T objects to this Request as overly broad as to time period. AT&T's response and production of documents will be limited to information from the time period of January 1, 2018 to the present. AT&T further objects that the phrase "unauthorized SIM swaps" is vague and ambiguous as to whose authorization is at issue or what constitutes authorization. AT&T will construe this phrase to mean SIM swaps that were performed in connection with the telephone numbers of AT&T customers without being authorized by those customers.

AT&T further objects to this Request to the extent that it seeks documents relating to ZenKey. Documents relating to ZenKey are not relevant to this litigation because ZenKey was not used by or available to Ross or any customer at the time of the alleged SIM swap. AT&T further objects that ZenKey is addressed only in the proposed amended complaint, which the Court has not granted Ross leave to file. AT&T further objects that to the extent the Request seeks documents regarding ZenKey, the Request is unduly burdensome and invasive of confidential, proprietary, trade secret, and/or sensitive financial information of third parties that AT&T is prohibited from disclosing and that has no bearing on this litigation. AT&T further objects that this Request is not proportionate

to the needs of this case to the extent it seeks documents regarding ZenKey because any tangential relevance Ross could theorize for ZenKey is outweighed by the burden of navigating these complex confidentiality issues. AT&T further objects that Ross can obtain any relevant information regarding ZenKey via public information easily accessible to Ross, including from AT&T's website.

Subject to and without waiving the foregoing General and Specific Objections, AT&T will produce non-privileged responsive documents, to the extent such documents exist and do not pertain to ZenKey, are in AT&T's possession, and can be located pursuant to a reasonable search.

**41.    DOCUMENTS RELATING TO AT&T's COMMUNICATIONS with the Mobile Authentication Task Force to combat unauthorized SIM swaps, including evaluation, recommendation, approval or rejection of SIM swap solutions.**

**<u>RESPONSE</u>:** AT&T objects to this Request as overly broad as to time period. AT&T's response and production of documents will be limited to information from the time period of January 1, 2018 to the present. AT&T further objects that the phrase "unauthorized SIM swaps" is vague and ambiguous as to whose authorization is at issue or what constitutes authorization. AT&T will construe this phrase to mean SIM swaps that were performed in connection with the telephone numbers of AT&T customers without being authorized by those customers. AT&T objects to this Request to the extent it seeks information regarding the claims and activities of other AT&T customers, containing the protected CPNI of other AT&T customers, and/or concerning incidents or occurrences that have no relevance to or bearing upon the claims or defenses in this case. AT&T further objects to this Request to the extent it seeks documents that contain information about other customers that is protected against disclosure by applicable federal and state law and authorities, including by not limited to the Federal Communications Act, 47 U.S.C. § 222, the Stored Communications Act, 18 U.S.C. § 2707, and the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510 *et seq*. AT&T further objects to the extent that the Request seeks materials protected by the privacy rights of third party customers.

AT&T further objects that documents regarding ZenKey, a product relating to the Mobile Authentication Task Force, are not relevant to this litigation because ZenKey was not used by or available to Ross or any customer at the time of the alleged SIM swap. AT&T objects that the requested

information regarding ZenKey has no relevance to Ross's claim that his own SIM swap should have or could have been prevented. AT&T further objects that ZenKey is addressed only in the proposed amended complaint, which the Court has not granted Ross leave to file. AT&T further objects that the Request is unduly burdensome and invasive of confidential, proprietary, trade secret, and/or sensitive financial information of third parties that AT&T is prohibited from disclosing and that has no bearing on this litigation. AT&T further objects that this Request is not proportionate to the needs of this case because any tangential relevance Ross could theorize for ZenKey or other products relating to the Mobile Authentication Task Force is outweighed by the burden of navigating these complex confidentiality issues. AT&T further objects that Ross can obtain any relevant information regarding ZenKey and the Mobile Authentication Task Force via public information easily accessible to Ross, including from AT&T's website.

AT&T will not produce documents responsive to this Request.

**42.  DOCUMENTS sufficient to show the intention to incorporate Project Halo technology into ZenKey.**

**RESPONSE:** AT&T objects to this Request as overly broad as to time period. AT&T's response and production of documents will be limited to information from the time period of January 1, 2018 to the present. AT&T objects to this Request as vague and ambiguous with respect to whose "intention" is referenced in the Request. AT&T objects to the Request to the extent it incorporates an assumption about AT&T's policies without any evidentiary support. AT&T objects that documents regarding ZenKey are not relevant to this litigation because ZenKey was not used by or available to Ross or any customer at the time of the alleged SIM swap. AT&T further objects that ZenKey is addressed only in the proposed amended complaint, which the Court has not granted Ross leave to file. AT&T further objects that the Request is unduly burdensome and invasive of confidential, proprietary, trade secret, and/or sensitive financial information of third parties that AT&T is prohibited from disclosing and that has no bearing on this litigation. AT&T further objects that this Request is not proportionate to the needs of this case because any tangential relevance Ross could theorize for ZenKey is outweighed by the burden of navigating these complex confidentiality issues. AT&T further objects that Ross can obtain any relevant information regarding ZenKey via

public information easily accessible to Ross, including from AT&T's website. AT&T further objects that AT&T's intentions regarding ZenKey and/or Project Halo have no relevance to Ross's claim that his own SIM swap should have or could have been prevented.

AT&T will not produce documents responsive to this Request.

**44.    COMMUNICATIONS between Johannes Jaskolski and Bill O'Hern RELATING TO unauthorized SIM swaps, including as they relate to ZenKey.**

**RESPONSE:** AT&T objects to this Request as overly broad as to time period. AT&T's response and production of documents will be limited to information from the time period of January 1, 2018 to the present. AT&T further objects that the phrase "unauthorized SIM swaps" is vague and ambiguous as to whose authorization is at issue or what constitutes authorization. AT&T will construe this phrase to mean SIM swaps that were performed in connection with the telephone numbers of AT&T customers without being authorized by those customers. AT&T further objects that the requested information regarding ZenKey has no relevance to Ross's claim that his own SIM swap should have or could have been prevented. AT&T objects to this Request to the extent it seeks information regarding the claims and activities of other AT&T customers, containing the protected CPNI of other AT&T customers, and/or concerning incidents or occurrences that have no relevance to or bearing upon the claims or defenses in this case. AT&T further objects to this Request because the requested information about other customers is protected against disclosure by applicable federal and state law and authorities, including by not limited to the Federal Communications Act, 47 U.S.C. § 222, the Stored Communications Act, 18 U.S.C. § 2707, and the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510 *et seq*. AT&T further objects that the Request seeks materials protected by the privacy right of third party customers.

AT&T further objects to this Request to the extent that it seeks documents relating to ZenKey. Documents relating to ZenKey are not relevant to this litigation because ZenKey was not used by or available to Ross or any customer at the time of the alleged SIM swap. AT&T further objects that ZenKey is addressed only in the proposed amended complaint, which the Court has not granted Ross leave to file. AT&T further objects that the requested information regarding ZenKey has no relevance to Ross's claim that his own SIM swap should have or could have been prevented. AT&T further objects that to the extent the Request seeks documents regarding ZenKey, the Request

15

is unduly burdensome and invasive of confidential, proprietary, trade secret, and/or sensitive financial information of third parties that AT&T is prohibited from disclosing and that has no bearing on this litigation. AT&T further objects that this Request is not proportionate to the needs of this case to the extent it seeks documents regarding ZenKey because any tangential relevance Ross could theorize for ZenKey is outweighed by the burden of navigating these complex confidentiality issues. AT&T further objects that Ross can obtain any relevant information regarding ZenKey via public information easily accessible to Ross, including from AT&T's website.

Subject to and without waiving the foregoing General and Specific Objections, AT&T will produce non-privileged responsive documents, to the extent such documents exist and do not pertain to ZenKey, are in AT&T's possession, and can be located pursuant to a reasonable search.

**45.**    **Communications between Johannes Jaskolski and GSMA RELATING TO unauthorized SIM swaps, including as they relate to ZenKey.**

**RESPONSE:** AT&T objects to this Request as overly broad as to time period. AT&T's response and production of documents will be limited to information from the time period of January 1, 2018 to the present. AT&T further objects that the phrase "unauthorized SIM swaps" is vague and ambiguous as to whose authorization is at issue or what constitutes authorization. AT&T will construe this phrase to mean SIM swaps that were performed in connection with the telephone numbers of AT&T customers without being authorized by those customers. AT&T objects to this Request to the extent it seeks information regarding the claims and activities of other AT&T customers, containing the protected CPNI of other AT&T customers, and/or concerning incidents or occurrences that have no relevance to or bearing upon the claims or defenses in this case. AT&T further objects to this Request because the requested information about other customers is protected against disclosure by applicable federal and state law and authorities, including by not limited to the Federal Communications Act, 47 U.S.C. § 222, the Stored Communications Act, 18 U.S.C. § 2707, and the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510 *et seq*. AT&T further objects that the Request seeks materials protected by the privacy right of third party customers.

AT&T further objects to this Request to the extent that it seeks documents relating to ZenKey. Documents relating to ZenKey are not relevant to this litigation because ZenKey was not

used by or available to Ross or any customer at the time of the alleged SIM swap. AT&T further objects that the requested information regarding ZenKey has no relevance to Ross's claim that his own SIM swap should have or could have been prevented. AT&T further objects that ZenKey is addressed only in the proposed amended complaint, which the Court has not granted Ross leave to file. AT&T further objects that to the extent the Request seeks documents regarding ZenKey, the Request is unduly burdensome and invasive of confidential, proprietary, trade secret, and/or sensitive financial information of third parties that AT&T is prohibited from disclosing and that has no bearing on this litigation. AT&T further objects that this Request is not proportionate to the needs of this case to the extent it seeks documents regarding ZenKey because any tangential relevance Ross could theorize for ZenKey is outweighed by the burden of navigating these complex confidentiality issues. AT&T further objects that Ross can obtain any relevant information regarding ZenKey via public information easily accessible to Ross, including from AT&T's website.

Subject to and without waiving the foregoing General and Specific Objections, AT&T will produce non-privileged responsive documents, to the extent such documents exist and do not pertain to ZenKey, are in AT&T's possession, and can be located pursuant to a reasonable search.

**46.** **Communications between Johannes Jaskolski and any Verizon employees RELATING TO unauthorized SIM swaps, including as they relate to ZenKey.**

**RESPONSE:** AT&T objects to this Request as overly broad as to time period. AT&T's response and production of documents will be limited to information from the time period of January 1, 2018 to the present. AT&T further objects that the phrase "unauthorized SIM swaps" is vague and ambiguous as to whose authorization is at issue or what constitutes authorization. AT&T will construe this phrase to mean SIM swaps that were performed in connection with the telephone numbers of AT&T customers without being authorized by those customers. AT&T objects to this Request to the extent it seeks information regarding the claims and activities of other AT&T customers, containing the protected CPNI of other AT&T customers, and/or concerning incidents or occurrences that have no relevance to or bearing upon the claims or defenses in this case. AT&T further objects to this Request because the requested information about other customers is protected against disclosure by applicable federal and state law and authorities, including by not limited to the

Federal Communications Act, 47 U.S.C. § 222, the Stored Communications Act, 18 U.S.C. § 2707, and the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510 *et seq*. AT&T further objects that the Request seeks materials protected by the privacy right of third party customers and/or by confidentiality interests of Verizon.

AT&T further objects to this Request to the extent that it seeks documents relating to ZenKey. Documents relating to ZenKey are not relevant to this litigation because ZenKey was not used by or available to Ross or any customer at the time of the alleged SIM swap. AT&T further objects that the requested information regarding ZenKey has no relevance to Ross's claim that his own SIM swap should have or could have been prevented. AT&T further objects that ZenKey is addressed only in the proposed amended complaint, which the Court has not granted Ross leave to file. AT&T further objects that to the extent the Request seeks documents regarding ZenKey, the Request is unduly burdensome and invasive of confidential, proprietary, trade secret, and/or sensitive financial information of third parties that AT&T is prohibited from disclosing and that has no bearing on this litigation. AT&T further objects that this Request is not proportionate to the needs of this case to the extent it seeks documents regarding ZenKey because any tangential relevance Ross could theorize for ZenKey is outweighed by the burden of navigating these complex confidentiality issues. AT&T further objects that Ross can obtain any relevant information regarding ZenKey via public information easily accessible to Ross, including from AT&T's website.

Subject to and without waiving the foregoing General and Specific Objections, AT&T will produce non-privileged responsive documents, to the extent such documents exist and do not pertain to ZenKey, are in AT&T's possession, and can be located pursuant to a reasonable search.

**47.**   **Communications between Johannes Jaskolski and any T-Mobile employees RELATING TO unauthorized SIM swaps, including as they relate to ZenKey.**

**RESPONSE:** AT&T objects to this Request as overly broad as to time period. AT&T's response and production of documents will be limited to information from the time period of January 1, 2018 to the present. AT&T further objects that the phrase "unauthorized SIM swaps" is vague and ambiguous as to whose authorization is at issue or what constitutes authorization. AT&T will construe this phrase to mean SIM swaps that were performed in connection with the telephone

numbers of AT&T customers without being authorized by those customers. AT&T objects to this Request to the extent it seeks information regarding the claims and activities of other AT&T customers, containing the protected CPNI of other AT&T customers, and/or concerning incidents or occurrences that have no relevance to or bearing upon the claims or defenses in this case. AT&T further objects to this Request because the requested information about other customers is protected against disclosure by applicable federal and state law and authorities, including by not limited to the Federal Communications Act, 47 U.S.C. § 222, the Stored Communications Act, 18 U.S.C. § 2707, and the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510 *et seq*. AT&T further objects that the Request seeks materials protected by the privacy right of third party customers.

AT&T further objects to this Request to the extent that it seeks documents relating to ZenKey. Documents relating to ZenKey are not relevant to this litigation because ZenKey was not used by or available to Ross or any customer at the time of the alleged SIM swap. AT&T further objects that the requested information regarding ZenKey has no relevance to Ross's claim that his own SIM swap should have or could have been prevented. AT&T further objects that ZenKey is addressed only in the proposed amended complaint, which the Court has not granted Ross leave to file. AT&T further objects that to the extent the Request seeks documents regarding ZenKey, the Request is unduly burdensome and invasive of confidential, proprietary, trade secret, and/or sensitive financial information of third parties that AT&T is prohibited from disclosing and that has no bearing on this litigation. AT&T further objects that this Request is not proportionate to the needs of this case to the extent it seeks documents regarding ZenKey because any tangential relevance Ross could theorize for ZenKey is outweighed by the burden of navigating these complex confidentiality issues. AT&T further objects that Ross can obtain any relevant information regarding ZenKey via public information easily accessible to Ross, including from AT&T's website.

Subject to and without waiving the foregoing General and Specific Objections, AT&T will produce non-privileged responsive documents, to the extent such documents exist and do not pertain to ZenKey, are in AT&T's possession, and can be located pursuant to a reasonable search.