**AFFELD GRIVAKES LLP**

2049 Century Park East, Ste. 2460
Los Angeles, CA 90067
Tel:  (310) 979-8700
Fax: (310) 979-8701

May 17, 2021

**Case 4:19-cv-06669-JST-DMR; Ross v. AT&T Mobility LLC et al.**

Dear Magistrate Judge Ryu:

This letter is submitted in connection with Mr. Ross's first set of Interrogatories and Requests for Production to AT&T. Counsel for the parties have met and conferred telephonically four times to attempt to narrow and resolve their disputes from November 2020 through May 2021.

The relevant case management dates are as follow: Close of Fact Discovery due by 7/8/2021. Designation of Experts due by 7/22/2021. Designation of Rebuttal Experts due by 8/26/2021. Close of Expert Discovery due by 9/14/2021. Dispositive Motion due by 10/12/2021. Pretrial Conference set for 2/3/2022. Jury trial set for 2/28/2022 - 3/11/2022.

On September 28, 2020, Mr. Ross propounded his first set of written discovery to AT&T. The parties disagree as set forth below.

**I.    NOTICE ISSUES**

Mr. Ross and AT&T disagree over the appropriate date range in which AT&T will state the number of unauthorized SIM swaps reported to AT&T by its customers (Rog No. 1).

***Mr. Ross's position***. AT&T proposed limiting the request starting January 1, 2018. This proposed temporal limitation attempts to thwart discovery on the key issue in the case, *i.e.*, how long AT&T was on notice of their growing unauthorized "SIM swap"[1] problem prior to Mr. Ross's October 2018 SIM swap, so that it could implement measures to combat the problem. Mr. Ross contends that AT&T failed to implement readily available solutions, *e.g.*, text or email message confirmation (which he never received, and which AT&T did not send to customers such as Mr. Ross), voice biometric verification (which AT&T ███████████████████████.[2]), *etc*. Mr. Ross has offered to compromise back to January 1, 2015 in light of the fact that the Federal Trade Commission warned publicly of the SIM swap problem as early as June 7, 2016 when the Chief

---

[1] An unauthorized SIM swap occurs when a mobile phone carrier changes the SIM card number in a customer's account without the customer's express consent, thereby activating a SIM card in another person's device (typically a hacker), thereby giving complete control of the customer's mobile phone service to the hacker. The hacker thus receives all text messages (and calls) sent to the customer's number and can change the passwords on the customer's email and financial accounts upon text receipt of the password reset codes.  See First Amended Complaint, ¶¶24-32 for a more complete explanation.

[2] ATT-ROSS_000003248: 6/7/18 email from AT&T AVP Valerie Scheder ███████████
█████████████████████████████████████████████████ (sent over 4 months before the subject SIM swap)

Magistrate Judge Ryu
Page 2

Technology Officer of the FTC was herself SIM swapped [3].  Mr. Ross believes that the problem existed for at least a year before that. The request is proportional to the case because AT&T has sole access to the information, the evidence is key to the issue of liability, and the benefit far outweighs any nominal burden to AT&T.

*AT&T's position.*  Mr. Ross's request for discovery going back to January 1, 2015 should fail for the same reasons, whether raised in connection with Interrogatory No. 1 (as in this issue), or in the third issue in this letter, his date complaint regarding Request for Production No. 1. Accordingly, AT&T's discussion here applies to both issues.

Mr. Ross's request is premised on the untenable position that "how long AT&T was on notice" that a very small percentage of the SIM swaps that its vendors performed for AT&T customers were unauthorized bears some relevance to this case.  It does not.  What is relevant to this case is what measures AT&T had to prevent unauthorized SIM swaps, and what its knowledge of unauthorized SIM swaps was for a reasonable period of time leading up to the alleged SIM swap.  Here, AT&T has produced documents going back to January 1, 2018, nearly a year before Mr. Ross alleges he experienced an unauthorized SIM swap.  This is more than ample to examine what AT&T's security measures were, what other measures were under consideration, and its extensive attempts to remedy the problem.  For example, the email Mr. Ross cites—in which an AT&T employee discusses the decision to focus security expenditures on Avertack rather than voice biometrics to get the maximum efficacy—is dated June 2018.  What AT&T was doing years before the alleged SIM swap has no bearing on the quality of its security in October 2018. Moreover, the issue of unauthorized SIM swaps resulting in claimed losses of money or cryptocurrency from other financial accounts is relatively new, first really developing, and coming to AT&T's attention, in 2018.

Although Mr. Ross initially agreed to the January 1, 2018, cutoff, he later retracted that agreement and now seeks documents and the number of SIM swaps dating to January 1, 2015. Although AT&T contends that production to January 1, 2018 is more than sufficient, pursuant to the local rules, AT&T has offered to compromise by also producing documents back to January 1, 2017, even though its investigation suggests that the amount of relevant material from 2017 is limited.  Mr. Ross has rejected this compromise.  His request for years of irrelevant discovery should be denied.  However, AT&T is willing to confer with Mr. Ross regarding discrete requests for particular documents prior to that date.

## II.    ZENKEY

Mr. Ross and AT&T disagree over the scope of production that Mr. Ross is entitled to regarding ZenKey (Rog No. 25 and RFP Nos. 35-47).

*Mr. Ross's position*.  AT&T has not responded to the written discovery relating to Zenkey. Since 2017, AT&T has been developing a for-profit "***post***-SIM swap solution" to prevent the theft of funds from customer bank and cryptocurrency accounts *after* a SIM swap has occurred.[4][5][6][7] The solution was developed as a direct result of AT&T's launch of the Mobile Authentication Task

---

[3] https://www.ftc.gov/news-events/blogs/techftc/2016/06/your-mobile-phone-account-could-be-hijacked-identity-thief

[4] https://about.att.com/story/att_teams_to_develop_mobile_authentication_solution.html

[5] https://krebsonsecurity.com/2018/09/u-s-mobile-giants-want-to-be-your-online-identity/

[6] https://about.att.com/story/2019/mobile_authentication_taskforce_zenkey.html

[7] https://medium.com/metacert/companies-behind-project-verify-show-a-history-of-data-breaches-d5f2658febd6

Magistrate Judge Ryu
Page 3

Force (over a year before the SIM swap against Mr. Ross), initially branded as "Project Verify," and subsequently rebranded as ZenKey. Rather than investing in sufficient solutions to prevent unauthorized SIM swaps from occurring in the first place, AT&T invested millions of dollars into ZenKey to market the ZenKey solution to financial institutions, who can pay a fee to do a real-time "SIM swap database check" to determine if a very recent SIM swap has occurred, and if so, deny high-risk transaction requests (e.g. a large withdrawal), thereby reducing *the banks'* "post-SIM swap" theft problem (i.e. *after* an unauthorized SIM swap has occurred). Mr. Ross alleges that AT&T only implemented half-hearted measures to combat the problem of unauthorized SIM swaps before they occur, and instead focused on its ZenKey investment, creating a profit opportunity from the very problem the failed to address. (FAC, ¶¶ 100-105).

Mr. Ross's allegations that AT&T prioritizes profit over security and consumer interest are not fantasy or fanciful musings as AT&T characterizes them: *First*, Mr. Ross alleges that AT&T (along with T-Mobile and Verizon) invested over two hundred million dollars into the ZenKey joint venture to create this *for-profit* "post-SIM swap solution" (FAC, ¶ 102-105), a position that stands in stark contrast to the evidence that the voice biometrics solution to unauthorized SIM swaps was eliminated due to budget cuts as set forth in footnote 2 above. *Second*, a comprehensive SIM swap study conducted by Princeton University's Department of Computer Science and Center for Information Technology Policy provides a convincing and unbiased view that the major US carriers do little to protect customers from SIM-swap attacks.[8] *Third*, AT&T's AVP Cybersecurity *and* GM of ZenKey, Johannes Jaskolski, has stated in publicly available videos that ZenKey allows financial and other service providers to prevent theft of funds *after* an unauthorized SIM swap occurs, stating "*Project Verify is not vulnerable to SIM swaps*", "*I want to design it in a way that any service provider [i.e. financial institution] will regret if they don't onboard it", "the service providers will have to pick up some of the costs",* and "*This is like at the chairman level of all 4 carriers*."[9] *Fourth*, in the March 23, 2021 letter to your Honor, Mr. Ross cited specific links to ZenKey's publicly available marketing website that confirmed its *essential purpose* as a SIM swap solution, and showcased its core revenue generating features as a solution to mitigate theft *after* an unauthorized SIM swap has occurred.[10] However, after the March 23, 2021 letter, the specific web pages Mr. Ross cited were dramatically altered from emphasizing the SIM swap-related benefits to more generic marketing language.[11]

Mr. Ross has agreed to limit his ZenKey requests to the following: (1) the identities and ZenKey roles and responsibilities of all AT&T's past and present officers, managers and directors who have or held positions at ZenKey; (2) the amounts and dates of AT&T's investments in ZenKey (including AT&T technology contributions); (3) ZenKey's detailed financial projections from conception to the present; (4) all ZenKey presentations and reports that mention SIM swaps; and (5) all communications between Johannes Jaskolski (AT&T's AVP Cybersecurity *and* GM of ZenKey) and Bill O'Hern (AT&T's Chief Security Officer and a member of ZenKey's board of directors) relating to unauthorized SIM swaps, including as they relate to ZenKey. This information is clearly relevant, proportional, and easily obtainable.

*AT&T's position.* Mr. Ross's ZenKey requests are improper both in their general subject matter and in the specific requests. That is, all of the requests are improper because ZenKey is not

---

[8] https://www.techspot.com/news/83528-princeton-study-shows-us-carriers-do-little-protect.html
[9] https://www.youtube.com/watch?v=NgpA2Dxln-0 (Quotes are at 24 min 36 sec, 31:13, 30:55, 33:48)
[10] https://web.archive.org/web/20210215194125/https:/myzenkey.com/trust-services/
[11] https://myzenkey.com/trust-services/

Magistrate Judge Ryu
Page 4

relevant to this case, and Mr. Ross's fishing expedition to build out a conspiracy theory that AT&T allows theft to occur is unsupported speculation. There is nothing in the quoted language above that even remotely suggests a disregard for customer privacy or any conduct warranting liability or damages of any sort.  Discovery cannot be fueled purely by fanciful musings.  There are limits.

As an initial matter, some clarity is necessary about what ZenKey is and is not.  ZenKey is a technology developed by a collaboration among AT&T, T-Mobile, and Verizon, with the aim "to build a more secure, multifactor identity authentication platform for all." About ZenKey, https://myzenkey.com/about/.  It was not developed to address SIM swaps in particular; it more broadly aims to create an authentication platform, which may benefit users seeking to avoid unauthorized SIM swaps (not merely for banks, as Mr. Ross claims). ZenKey was *not* used by, or available to, Mr. Ross.  It went live on September 17, 2020, nearly two years after his alleged SIM swap.  Indeed, information on it is still being released. Although Mr. Ross suggests some suspect "alter[ation]" of the ZenKey website, the truth is far simpler: the prior version of the website (*see* footnote 10) addressed SIM swaps specifically and then noted that AT&T was "working on making Event Alerts available in 2021"; the new version (*see* footnote 11) redid the page to add information on "Trust Alerts" and describe the broader features more generally, rather than addressing SIM swaps specifically.  In any event, ZenKey's recent launch makes it irrelevant. Mr. Ross's baseless conjecture is not that ZenKey was available earlier but was not used, but that because of a profit motive relating to ZenKey, AT&T did not adopt other solutions to unauthorized SIM swaps.  Details about ZenKey have nothing to do with whether AT&T could have, but did not, employ *other* security measures beside ZenKey, or whether AT&T acted with due care in 2018. Moreover, because ZenKey is a collaboration with T-Mobile and Verizon, AT&T would have to address confidentiality obligations before it could produce sensitive documents regarding ZenKey, an unwarranted burden given the irrelevance of the information.

Moreover, Mr. Ross's particular requests are improper. It is public information that Johannes Jaskolski, an AT&T employee, is general manager of ZenKey.  Mr. Ross provides no basis for further exploration into ZenKey's management.  Mr. Ross's request for information on AT&T's investments makes no sense in light of Mr. Ross's relevance theory, which is based on AT&T's decision not to adopt *other* technologies and therefore turns on the existence and feasibility of such other technologies.  Similarly, ZenKey's financials are not relevant; indeed, because it is a joint venture, the financial projections for ZenKey are not even applicable to AT&T. Finally, AT&T has produced communications between Mr. Jaskolski and Mr. O'Hern regarding to unauthorized SIM swaps. It is possible that some documents that refer to SIM swaps may also refer to ZenKey, and AT&T has produced such documents.  What AT&T objects to is searching for documents about ZenKey that have no relevance to unauthorized SIM swaps.

## III.   AT&T OFFICERS, MANAGERS, AND EMPLOYEES

Mr. Ross and AT&T disagree over the appropriate date range for which AT&T will produce documents (RFP No. 1).

***Mr. Ross's position***.   AT&T limited its production to documents authored after January 1, 2018.  Mr. Ross has disputed this arbitrary temporal limitation since the parties commenced the process. As with Rog No 1, Mr. Ross has offered to compromise and only ask for RFP No 1 documents authored from January 1, 2015. For the same reasons that Rog No.1 should be answered, so too should RFP 1.  In addition, AT&T's production appears to be perfunctory. By way of example, AT&T contended in the prior letter your Honor that the Chief Security Officer

Magistrate Judge Ryu
Page 5

for AT&T (Bill O'Hern) was not an "appropriate custodian." Since then, AT&T produced only *five* emails to or from Mr. O'Hern relating to SIM swaps. It is inconceivable that the person in charge of preventing fraud, as well as AT&T's "SIM Swap Response Team," is a party to only five communications on the topic. Mr. O'Hern's example is but one of several where AT&T appears to have conducted a less than thorough search for responsive documents.

*AT&T's position*. AT&T's position as to the date limitation on RFP No. 1 is the same as with respect to Interrogatory No. 1. That is, while an appropriate date cutoff would be January 1, 2018, AT&T will compromise by using January 1, 2017, even though Mr. Ross's alleged SIM swap did not occur until October 2018. AT&T incorporates its further discussion above.

Mr. Ross also complains that AT&T said that Bill O'Hern was not an appropriate custodian, and that, upon reviewing produced documents, he has noted that Mr. O'Hern is not involved in much of that correspondence. This complaint makes little sense. That Mr. O'Hern is not involved in the substantial correspondence AT&T has produced *confirms* AT&T's prior statement that Mr. O'Hern is not an appropriate custodian for this case; the seven custodians that AT&T has agreed to search have the relevant information. Mr. Ross's request that AT&T search Mr. O'Hern because he is *not* heavily involved is unpersuasive.

## IV.   PAYMENTS.

Mr. Ross and AT&T disagree over whether the total dollar amount AT&T has paid out to customers on unauthorized SIM swap claims is discoverable (Rog No. 6).

*Mr. Ross's position*. This information is relevant to whether AT&T had a financial incentive to avoid fixing the problem and instead sought to profit from it, *e.g.*, if it has paid minimal sums to resolve SIM swap claims, but projected billions in profits from the post-SIM swap solution (ZenKey) it is developing and marketing to financial institutions. The request is proportional to the case because AT&T has sole access to the information, the evidence is relevant to the issue of punitive damages, and the benefit far outweighs any nominal burden to AT&T. AT&T's contention that it would have to look into confidentiality provisions of each settlement is disingenuous: Mr. Ross is asking for an aggregate number, not cases specific information.

*AT&T's position*. The amount of money that AT&T has paid to all customers on any SIM swap claim—whether individually or in the aggregate—is not relevant or proportionate to whether Mr. Ross suffered a loss from a SIM swap or whether that loss (if suffered) was caused by AT&T. Mr. Ross's conclusory assertion that this is relevant to whether AT&T has a financial incentive to avoid fixing the problem is illogical. Whether AT&T has paid a lot or a little to other customers, its incentive is to protect its customers. And if AT&T has paid a small amount, that sheds no light on whether it therefore viewed the problem as unimportant, or whether the problem in fact just has limited effect. Moreover, AT&T would have to review any relevant settlement agreement individually to ensure that no response to this interrogatory could violate any confidentiality agreement. Particularly given the lack of relevance, there is no basis to put this burden on AT&T.

| Very truly yours, | Very truly yours, |
|---|---|
| */s/Christopher Grivakes* | */s/Marcellus McRae* |
| Christopher Grivakes | Marcellus McRae |

## INTERROGATORIES

**1.    For each year from 2013 to the present, state the number of unauthorized SIM swaps reported to AT&T by its customers.**

**RESPONSE:** AT&T objects to this Interrogatory as overly broad as to time period. AT&T's response will be limited to information from the time period of January 1, 2018, to the present. AT&T further objects that the phrase "unauthorized SIM swaps" is vague and ambiguous as to whose authorization is at issue or what constitutes authorization. AT&T will construe this phrase to mean SIM swaps that were performed in connection with the telephone numbers of AT&T customers without being authorized by those customers. AT&T objects to this Interrogatory to the extent it seeks information not within AT&T's possession, custody, or control or not ascertainable by any reasonable method, including which SIM swaps were authorized by an AT&T customer. AT&T objects to this Interrogatory to the extent it seeks information regarding the claims and activities of other AT&T customers, containing the protected CPNI of other AT&T customers, and/or concerning incidents or occurrences that have no relevance to or bearing upon the claims or defenses in this case. Because Ross has alleged that AT&T violated its duties to him and his claims will rise or fall based on the evidence concerning his own interactions with AT&T, information regarding SIM swaps experienced by other customers is not relevant to any issue in this case, is not proportional to the needs of the case, and the burden of identifying, collecting, and producing such information would far outweigh any likely benefit of the disclosure of such information in this matter. AT&T further objects to the extent that the requested information is protected against disclosure by applicable federal and state law and authorities, including by not limited to the Federal Communications Act, 47 U.S.C. § 222, the Stored Communications Act, 18 U.S.C. § 2707, and the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510 *et seq*. AT&T further objects that the Interrogatory seeks materials protected by the privacy right of third party customers. AT&T further objects that the Interrogatory seeks materials protected by attorney-client and/or attorney work product privileges. AT&T's investigation into the matters at issue in this case and this Interrogatory is continuing. AT&T reserves the right to supplement, correct, or update this or any response at a later date. Based on the foregoing General and Specific

Objections, AT&T will meet and confer over whether there is an acceptable scope to this Interrogatory.

**6.       State the total dollar amount paid by AT&T to resolve claims arising out of unauthorized SIM swaps**

**RESPONSE:** AT&T objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of this case because it is unlimited as to time. AT&T's response will therefore be limited to information from the time period of January 1, 2018 to the present. AT&T also objects that the Interrogatory is overly broad, unduly burdensome, and not proportional to the needs of this case to the extent it seeks information not relevant to the incidents at issue. For example, this Interrogatory calls for information regarding any payments made by AT&T to other AT&T subscribers based on incidents or occurrences that involve entirely different facts and circumstances than any SIM swap at issue in this case. Such information has no relevance to or bearing upon the claims or defenses in this case. Because Ross has alleged that AT&T violated its duties to him and his claims will rise or fall based on the evidence concerning his own interactions with AT&T, information regarding SIM swaps experienced by other customers is not relevant to any issue in this case, is not proportional to the needs of the case, and the burden of identifying, collecting, and producing such information would far outweigh any likely benefit of the disclosure of such information in this matter. Moreover, information pertaining to other subscribers may contain information that is protected against disclosure by applicable federal and state law and authorities, including by not limited to the Federal Communications Act, 47 U.S.C. § 222, the Stored Communications Act, 18 U.S.C. § 2707, and the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510 *et seq*. AT&T further objects that any settlements entered by AT&T, to the extent they exist, may include confidentiality provisions that preclude disclosure of any information regarding the settlement, including its amount. AT&T further objects that the Interrogatory seeks materials protected by the privacy rights of third party subscribers. AT&T further objects that the phrase "unauthorized SIM swaps" is vague and ambiguous as to whose authorization is at issue or what constitutes authorization. AT&T will construe this phrase to mean SIM swaps that were performed in connection with the telephone numbers of AT&T customers without being authorized

1

by those customers. AT&T's investigation into the matters at issue in this case and this Interrogatory is continuing. AT&T reserves the right to supplement, correct, or update this or any response at a later date.

For the reasons set forth in the foregoing General and Specific Objections, AT&T will not provide a further response to this Interrogatory.

**25.   IDENTIFY each of AT&T's past and present officers, managers and directors who have held positions with ZENKEY**

**<u>RESPONSE</u>:** AT&T objects to this Interrogatory as overly broad as to time period. AT&T's response and production of documents will be limited to information from the time period of January 1, 2018 to the present. AT&T objects that information regarding ZenKey is not relevant to this litigation because ZenKey was not used by or available to Ross or any customer at the time of the alleged SIM swap. AT&T further objects that ZenKey is addressed only in the proposed amended complaint, which the Court has not granted Ross leave to file. AT&T further objects that the Interrogatory is unduly burdensome and invasive of confidential, proprietary, trade secret, and/or sensitive financial information of third parties that AT&T is prohibited from disclosing and that has no bearing on this litigation. AT&T further objects that this Interrogatory is not proportionate to the needs of this case because any tangential relevance Ross could theorize for ZenKey is outweighed by the burden of navigating these complex confidentiality issues. AT&T further objects that Ross can obtain any relevant information regarding ZenKey via public information easily accessible to Ross, including from AT&T's website. AT&T further objects that AT&T's intentions regarding the ZenKey App have no relevance to Ross's claim that his own SIM swap should have or could have been prevented. AT&T's investigation into the matters at issue in this case and this Interrogatory is continuing. AT&T reserves the right to supplement, correct, or update this or any response at a later date.

Based on its General and Specific Objections, AT&T will not further respond to this Interrogatory.

1

**REQUESTS FOR PRODUCTION**

2

3      **35.      All DOCUMENTS RELATING TO features of the ZenKey App which are
               intended to combat fraud or theft due to unauthorized SIM swaps.**

4

5      **RESPONSE:** AT&T objects to this Request as overly broad as to time period. AT&T's

6      response and production of documents will be limited to information from the time period of January

       1, 2018 to the present. AT&T further objects that the phrase "unauthorized SIM swaps" is vague and

7      ambiguous as to whose authorization is at issue or what constitutes authorization. AT&T will

8      construe this phrase to mean SIM swaps that were performed in connection with the telephone

9      numbers of AT&T customers without being authorized by those customers. AT&T objects to the

10     phrase "which are intended to" as vague and ambiguous with respect to whose intentions are

11     referenced. AT&T objects that documents regarding ZenKey are not relevant to this litigation

12     because ZenKey was not used by or available to Ross or any customer at the time of the alleged SIM

13     swap. AT&T further objects that ZenKey is addressed only in the proposed amended complaint,

14     which the Court has not granted Ross leave to file. AT&T further objects that the Request is unduly

15     burdensome and invasive of confidential, proprietary, trade secret, and/or sensitive financial

16     information of third parties that AT&T is prohibited from disclosing and that has no bearing on this

17     litigation. AT&T further objects that this Request is not proportionate to the needs of this case

18     because any tangential relevance Ross could theorize for ZenKey is outweighed by the burden of

19     navigating these complex confidentiality issues. AT&T further objects that Ross can obtain any

20     relevant information regarding ZenKey via public information easily accessible to Ross, including

21     from AT&T's website. AT&T further objects that AT&T's intentions regarding the ZenKey App

22     have no relevance to Ross's claim that his own SIM swap should have or could have been prevented.

23            AT&T will not produce documents responsive to this Request.

24     **36.      DOCUMENTS sufficient to show (i) the investment in ZENKEY by AT&T (or
               any parent, subsidiary or affiliate), (ii) the IDENTITY of officers, managers,**

25             **directors or employees of AT&T (and its parent, subsidiary and sibling entities)
               who have any management role or board seat in ZENKEY, (iii) ZENKEY sales**

26             **and marketing presentations to financial institutions, and (iv) the detailed
               financial projections (including pricing, revenue, and profit) for ZENKEY.**

27

28

3

**RESPONSE**: AT&T objects to this Request as overly broad as to time period. AT&T's response and production of documents will be limited to information from the time period of January 1, 2018 to the present. AT&T objects that documents regarding ZenKey are not relevant to this litigation because ZenKey was not used by or available to Ross or any customer at the time of the alleged SIM swap. AT&T further objects that ZenKey is addressed only in the proposed amended complaint, which the Court has not granted Ross leave to file. AT&T further objects that the Request is unduly burdensome and invasive of confidential, proprietary, trade secret, and/or sensitive financial information of third parties that AT&T is prohibited from disclosing and that has no bearing on this litigation. AT&T further objects that this Request is not proportionate to the needs of this case because any tangential relevance Ross could theorize for ZenKey is outweighed by the burden of navigating these complex confidentiality issues. AT&T further objects that Ross can obtain any relevant information regarding ZenKey via public information easily accessible to Ross, including from AT&T's website. AT&T further objects that the requested financial information regarding ZenKey has no relevance to Ross's claim that his own SIM swap should have or could have been prevented.

AT&T will not produce documents responsive to this Request.

**37.    All organization charts detailing the executive management and board of managers (or directors) of ZENKEY.**

**RESPONSE**: AT&T objects to this Request as overly broad as to time period. AT&T's response and production of documents will be limited to information from the time period of January 1, 2018 to the present. AT&T objects to this request for documents concerning the organization of an unaffiliated third party as overly broad because it seeks irrelevant materials having no bearing on the claims or defenses in this matter, and the burden of identifying such materials is not proportional to the needs of this case. AT&T further objects to this request as vague and ambiguous with regard to the term "executive management." AT&T objects that documents regarding ZenKey are not relevant to this litigation because ZenKey was not used by or available to Ross or any customer at the time of the alleged SIM swap. AT&T further objects that ZenKey is addressed only in the proposed amended complaint, which the Court has not granted Ross leave to file. AT&T further

4

objects that the Request is unduly burdensome and invasive of confidential, proprietary, trade secret, and/or sensitive financial information of third parties that AT&T is prohibited from disclosing and that has no bearing on this litigation. AT&T further objects that this Request is not proportionate to the needs of this case because any tangential relevance Ross could theorize for ZenKey is outweighed by the burden of navigating these complex confidentiality issues. AT&T further objects that Ross can obtain any relevant information regarding ZenKey via public information easily accessible to Ross, including from AT&T's website. AT&T further objects that the requested information regarding ZenKey has no relevance to Ross's claim that his own SIM swap should have or could have been prevented.

AT&T will not produce documents responsive to this Request.

**39.    DOCUMENTS sufficient to show the reporting relationship between Johannes Jaskolski & Bill O'Hern from October 2017 to the present.**

**<u>RESPONSE</u>:** AT&T objects to this Request as overly broad as to time period. AT&T's response and production of documents will be limited to information from the time period of January 1, 2018 to the present.

Subject to and without waiving the foregoing General and Specific Objections, AT&T will produce documents sufficient to show the current reporting relationship between Johannes Jaskolski and Bill O'Hern.

**40.    Presentations made by Johannes Jaskolski RELATING TO unauthorized SIM swaps.**

**<u>RESPONSE</u>:** AT&T objects to this Request as overly broad as to time period. AT&T's response and production of documents will be limited to information from the time period of January 1, 2018 to the present. AT&T further objects that the phrase "unauthorized SIM swaps" is vague and ambiguous as to whose authorization is at issue or what constitutes authorization. AT&T will construe this phrase to mean SIM swaps that were performed in connection with the telephone numbers of AT&T customers without being authorized by those customers.

AT&T further objects to this Request to the extent that it seeks documents relating to ZenKey. Documents relating to ZenKey are not relevant to this litigation because ZenKey was not

used by or available to Ross or any customer at the time of the alleged SIM swap. AT&T further objects that ZenKey is addressed only in the proposed amended complaint, which the Court has not granted Ross leave to file. AT&T further objects that to the extent the Request seeks documents regarding ZenKey, the Request is unduly burdensome and invasive of confidential, proprietary, trade secret, and/or sensitive financial information of third parties that AT&T is prohibited from disclosing and that has no bearing on this litigation. AT&T further objects that this Request is not proportionate to the needs of this case to the extent it seeks documents regarding ZenKey because any tangential relevance Ross could theorize for ZenKey is outweighed by the burden of navigating these complex confidentiality issues. AT&T further objects that Ross can obtain any relevant information regarding ZenKey via public information easily accessible to Ross, including from AT&T's website.

Subject to and without waiving the foregoing General and Specific Objections, AT&T will produce non-privileged responsive documents, to the extent such documents exist and do not pertain to ZenKey, are in AT&T's possession, and can be located pursuant to a reasonable search.

**41.   DOCUMENTS RELATING TO AT&T's COMMUNICATIONS with the Mobile Authentication Task Force to combat unauthorized SIM swaps, including evaluation, recommendation, approval or rejection of SIM swap solutions.**

**RESPONSE:** AT&T objects to this Request as overly broad as to time period. AT&T's response and production of documents will be limited to information from the time period of January 1, 2018 to the present. AT&T further objects that the phrase "unauthorized SIM swaps" is vague and ambiguous as to whose authorization is at issue or what constitutes authorization. AT&T will construe this phrase to mean SIM swaps that were performed in connection with the telephone numbers of AT&T customers without being authorized by those customers. AT&T objects to this Request to the extent it seeks information regarding the claims and activities of other AT&T customers, containing the protected CPNI of other AT&T customers, and/or concerning incidents or occurrences that have no relevance to or bearing upon the claims or defenses in this case. AT&T further objects to this Request to the extent it seeks documents that contain information about other customers that is protected against disclosure by applicable federal and state law and authorities, including by not limited to the Federal Communications Act, 47 U.S.C. § 222, the Stored

6

Communications Act, 18 U.S.C. § 2707, and the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510 *et seq*. AT&T further objects to the extent that the Request seeks materials protected by the privacy rights of third party customers.

AT&T further objects that documents regarding ZenKey, a product relating to the Mobile Authentication Task Force, are not relevant to this litigation because ZenKey was not used by or available to Ross or any customer at the time of the alleged SIM swap. AT&T objects that the requested information regarding ZenKey has no relevance to Ross's claim that his own SIM swap should have or could have been prevented. AT&T further objects that ZenKey is addressed only in the proposed amended complaint, which the Court has not granted Ross leave to file. AT&T further objects that the Request is unduly burdensome and invasive of confidential, proprietary, trade secret, and/or sensitive financial information of third parties that AT&T is prohibited from disclosing and that has no bearing on this litigation. AT&T further objects that this Request is not proportionate to the needs of this case because any tangential relevance Ross could theorize for ZenKey or other products relating to the Mobile Authentication Task Force is outweighed by the burden of navigating these complex confidentiality issues. AT&T further objects that Ross can obtain any relevant information regarding ZenKey and the Mobile Authentication Task Force via public information easily accessible to Ross, including from AT&T's website.

AT&T will not produce documents responsive to this Request.

**42.    DOCUMENTS sufficient to show the intention to incorporate Project Halo technology into ZenKey.**

**RESPONSE:** AT&T objects to this Request as overly broad as to time period. AT&T's response and production of documents will be limited to information from the time period of January 1, 2018 to the present. AT&T objects to this Request as vague and ambiguous with respect to whose "intention" is referenced in the Request. AT&T objects to the Request to the extent it incorporates an assumption about AT&T's policies without any evidentiary support. AT&T objects that documents regarding ZenKey are not relevant to this litigation because ZenKey was not used by or available to Ross or any customer at the time of the alleged SIM swap. AT&T further objects that ZenKey is addressed only in the proposed amended complaint, which the Court has not granted Ross

leave to file. AT&T further objects that the Request is unduly burdensome and invasive of confidential, proprietary, trade secret, and/or sensitive financial information of third parties that AT&T is prohibited from disclosing and that has no bearing on this litigation. AT&T further objects that this Request is not proportionate to the needs of this case because any tangential relevance Ross could theorize for ZenKey is outweighed by the burden of navigating these complex confidentiality issues. AT&T further objects that Ross can obtain any relevant information regarding ZenKey via public information easily accessible to Ross, including from AT&T's website. AT&T further objects that AT&T's intentions regarding ZenKey and/or Project Halo have no relevance to Ross's claim that his own SIM swap should have or could have been prevented.

AT&T will not produce documents responsive to this Request.

**44.** **COMMUNICATIONS between Johannes Jaskolski and Bill O'Hern RELATING TO unauthorized SIM swaps, including as they relate to ZenKey.**

**RESPONSE:** AT&T objects to this Request as overly broad as to time period. AT&T's response and production of documents will be limited to information from the time period of January 1, 2018 to the present. AT&T further objects that the phrase "unauthorized SIM swaps" is vague and ambiguous as to whose authorization is at issue or what constitutes authorization. AT&T will construe this phrase to mean SIM swaps that were performed in connection with the telephone numbers of AT&T customers without being authorized by those customers. AT&T further objects that the requested information regarding ZenKey has no relevance to Ross's claim that his own SIM swap should have or could have been prevented. AT&T objects to this Request to the extent it seeks information regarding the claims and activities of other AT&T customers, containing the protected CPNI of other AT&T customers, and/or concerning incidents or occurrences that have no relevance to or bearing upon the claims or defenses in this case. AT&T further objects to this Request because the requested information about other customers is protected against disclosure by applicable federal and state law and authorities, including by not limited to the Federal Communications Act, 47 U.S.C. § 222, the Stored Communications Act, 18 U.S.C. § 2707, and the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510 *et seq*. AT&T further objects that the Request seeks materials protected by the privacy right of third party customers.

AT&T further objects to this Request to the extent that it seeks documents relating to ZenKey. Documents relating to ZenKey are not relevant to this litigation because ZenKey was not used by or available to Ross or any customer at the time of the alleged SIM swap. AT&T further objects that ZenKey is addressed only in the proposed amended complaint, which the Court has not granted Ross leave to file. AT&T further objects that the requested information regarding ZenKey has no relevance to Ross's claim that his own SIM swap should have or could have been prevented. AT&T further objects that to the extent the Request seeks documents regarding ZenKey, the Request is unduly burdensome and invasive of confidential, proprietary, trade secret, and/or sensitive financial information of third parties that AT&T is prohibited from disclosing and that has no bearing on this litigation. AT&T further objects that this Request is not proportionate to the needs of this case to the extent it seeks documents regarding ZenKey because any tangential relevance Ross could theorize for ZenKey is outweighed by the burden of navigating these complex confidentiality issues. AT&T further objects that Ross can obtain any relevant information regarding ZenKey via public information easily accessible to Ross, including from AT&T's website.

Subject to and without waiving the foregoing General and Specific Objections, AT&T will produce non-privileged responsive documents, to the extent such documents exist and do not pertain to ZenKey, are in AT&T's possession, and can be located pursuant to a reasonable search.

**45.   Communications between Johannes Jaskolski and GSMA RELATING TO unauthorized SIM swaps, including as they relate to ZenKey.**

**RESPONSE:** AT&T objects to this Request as overly broad as to time period. AT&T's response and production of documents will be limited to information from the time period of January 1, 2018 to the present. AT&T further objects that the phrase "unauthorized SIM swaps" is vague and ambiguous as to whose authorization is at issue or what constitutes authorization. AT&T will construe this phrase to mean SIM swaps that were performed in connection with the telephone numbers of AT&T customers without being authorized by those customers. AT&T objects to this Request to the extent it seeks information regarding the claims and activities of other AT&T customers, containing the protected CPNI of other AT&T customers, and/or concerning incidents or occurrences that have no relevance to or bearing upon the claims or defenses in this case. AT&T

further objects to this Request because the requested information about other customers is protected against disclosure by applicable federal and state law and authorities, including by not limited to the Federal Communications Act, 47 U.S.C. § 222, the Stored Communications Act, 18 U.S.C. § 2707, and the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510 *et seq*. AT&T further objects that the Request seeks materials protected by the privacy right of third party customers.

AT&T further objects to this Request to the extent that it seeks documents relating to ZenKey. Documents relating to ZenKey are not relevant to this litigation because ZenKey was not used by or available to Ross or any customer at the time of the alleged SIM swap. AT&T further objects that the requested information regarding ZenKey has no relevance to Ross's claim that his own SIM swap should have or could have been prevented. AT&T further objects that ZenKey is addressed only in the proposed amended complaint, which the Court has not granted Ross leave to file. AT&T further objects that to the extent the Request seeks documents regarding ZenKey, the Request is unduly burdensome and invasive of confidential, proprietary, trade secret, and/or sensitive financial information of third parties that AT&T is prohibited from disclosing and that has no bearing on this litigation. AT&T further objects that this Request is not proportionate to the needs of this case to the extent it seeks documents regarding ZenKey because any tangential relevance Ross could theorize for ZenKey is outweighed by the burden of navigating these complex confidentiality issues. AT&T further objects that Ross can obtain any relevant information regarding ZenKey via public information easily accessible to Ross, including from AT&T's website.

Subject to and without waiving the foregoing General and Specific Objections, AT&T will produce non-privileged responsive documents, to the extent such documents exist and do not pertain to ZenKey, are in AT&T's possession, and can be located pursuant to a reasonable search.

**46.      Communications between Johannes Jaskolski and any Verizon employees RELATING TO unauthorized SIM swaps, including as they relate to ZenKey.**

**RESPONSE:** AT&T objects to this Request as overly broad as to time period. AT&T's response and production of documents will be limited to information from the time period of January 1, 2018 to the present. AT&T further objects that the phrase "unauthorized SIM swaps" is vague and ambiguous as to whose authorization is at issue or what constitutes authorization. AT&T will

construe this phrase to mean SIM swaps that were performed in connection with the telephone numbers of AT&T customers without being authorized by those customers. AT&T objects to this Request to the extent it seeks information regarding the claims and activities of other AT&T customers, containing the protected CPNI of other AT&T customers, and/or concerning incidents or occurrences that have no relevance to or bearing upon the claims or defenses in this case. AT&T further objects to this Request because the requested information about other customers is protected against disclosure by applicable federal and state law and authorities, including by not limited to the Federal Communications Act, 47 U.S.C. § 222, the Stored Communications Act, 18 U.S.C. § 2707, and the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510 *et seq*. AT&T further objects that the Request seeks materials protected by the privacy right of third party customers and/or by confidentiality interests of Verizon.

AT&T further objects to this Request to the extent that it seeks documents relating to ZenKey. Documents relating to ZenKey are not relevant to this litigation because ZenKey was not used by or available to Ross or any customer at the time of the alleged SIM swap. AT&T further objects that the requested information regarding ZenKey has no relevance to Ross's claim that his own SIM swap should have or could have been prevented. AT&T further objects that ZenKey is addressed only in the proposed amended complaint, which the Court has not granted Ross leave to file. AT&T further objects that to the extent the Request seeks documents regarding ZenKey, the Request is unduly burdensome and invasive of confidential, proprietary, trade secret, and/or sensitive financial information of third parties that AT&T is prohibited from disclosing and that has no bearing on this litigation. AT&T further objects that this Request is not proportionate to the needs of this case to the extent it seeks documents regarding ZenKey because any tangential relevance Ross could theorize for ZenKey is outweighed by the burden of navigating these complex confidentiality issues. AT&T further objects that Ross can obtain any relevant information regarding ZenKey via public information easily accessible to Ross, including from AT&T's website.

Subject to and without waiving the foregoing General and Specific Objections, AT&T will produce non-privileged responsive documents, to the extent such documents exist and do not pertain to ZenKey, are in AT&T's possession, and can be located pursuant to a reasonable search.

1
2

**47.      Communications between Johannes Jaskolski and any T-Mobile employees RELATING TO unauthorized SIM swaps, including as they relate to ZenKey.**

3

**RESPONSE:** AT&T objects to this Request as overly broad as to time period. AT&T's

4

response and production of documents will be limited to information from the time period of January

5

1, 2018 to the present. AT&T further objects that the phrase "unauthorized SIM swaps" is vague and

6

ambiguous as to whose authorization is at issue or what constitutes authorization. AT&T will

7

construe this phrase to mean SIM swaps that were performed in connection with the telephone

8

numbers of AT&T customers without being authorized by those customers. AT&T objects to this

9

Request to the extent it seeks information regarding the claims and activities of other AT&T

10

customers, containing the protected CPNI of other AT&T customers, and/or concerning incidents or

11

occurrences that have no relevance to or bearing upon the claims or defenses in this case. AT&T

12

further objects to this Request because the requested information about other customers is protected

13

against disclosure by applicable federal and state law and authorities, including by not limited to the

14

Federal Communications Act, 47 U.S.C. § 222, the Stored Communications Act, 18 U.S.C. § 2707,

15

and the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510 *et seq*. AT&T further

16

objects that the Request seeks materials protected by the privacy right of third party customers.

17

AT&T further objects to this Request to the extent that it seeks documents relating to ZenKey.

18

Documents relating to ZenKey are not relevant to this litigation because ZenKey was not used by or

19

available to Ross or any customer at the time of the alleged SIM swap. AT&T further objects that

20

the requested information regarding ZenKey has no relevance to Ross's claim that his own SIM

21

swap should have or could have been prevented. AT&T further objects that ZenKey is addressed

22

only in the proposed amended complaint, which the Court has not granted Ross leave to file. AT&T

23

further objects that to the extent the Request seeks documents regarding ZenKey, the Request is

24

unduly burdensome and invasive of confidential, proprietary, trade secret, and/or sensitive financial

25

information of third parties that AT&T is prohibited from disclosing and that has no bearing on this

26

litigation. AT&T further objects that this Request is not proportionate to the needs of this case to the

27

extent it seeks documents regarding ZenKey because any tangential relevance Ross could theorize

28

for ZenKey is outweighed by the burden of navigating these complex confidentiality issues. AT&T

further objects that Ross can obtain any relevant information regarding ZenKey via public information easily accessible to Ross, including from AT&T's website.

Subject to and without waiving the foregoing General and Specific Objections, AT&T will produce non-privileged responsive documents, to the extent such documents exist and do not pertain to ZenKey, are in AT&T's possession, and can be located pursuant to a reasonable search.